NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
BRYANT Y. YANG (Cal. Bar No. 252943)
Assistant United States Attorney
International Narcotics, Money
 Laundering, & Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-0166
     Facsimile:  (213) 894-0142
     E-mail:     bryant.yang@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                 UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 8:17-00076-CJC |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS |
| v. | |
| JEFFREY OLSEN, | Hearing Date: October 13, 2020 |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorney Bryant Y. Yang,

hereby submits its opposition to the motion to dismiss filed by

defendant JEFFREY OLSEN ("defendant").

///

///

///

This opposition is based upon the attached memorandum of points and authorities; the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 22, 2020          Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division


_____/s/_____
BRYANT Y. YANG
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                    <u>PAGE</u>

**Contents**

MEMORANDUM OF POINTS AND AUTHORITIES...............................5

I.    INTRODUCTION...................................................5

II.   STATEMENT OF FACTS.............................................6

III.  ARGUMENT.....................................................11

      A.    Speedy Trial Act.......................................11

            1.    Legal Standard...................................11

            2.    No Speedy Trial Act Violation Has Occurred.........12

            3.    Seriousness Of The Offenses........................12

            4.    Facts And Circumstances Leading To Dismissal.......15

            5.    Impact Of Reprosecution On The Administration Of
                  Justice...........................................19

      B.    Sixth Amendment........................................21

            1.    Legal Standard...................................21

            2.    Length Of Delay..................................22

            3.    The Reason For The Delay.........................23

            4.    Defendant's Assertion Of His Right................25

            5.    Prejudice To Defendant...........................26

IV.   CONCLUSION...................................................28

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                          <u>PAGE</u>

CASES

<u>Barker v. Wingo</u>,

  407 U.S. 514 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24, 25

<u>Doyle v. Law</u>,

  464 F. App'x 601 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Harmelin v. Michigan</u>,

  501 U.S. 957 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>McNeely v. Blanas</u>,

  336 F.3d 822 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>Taylor v. Lewis</u>,

  460 F.3d 1093 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>United States v. Arango</u>,

  879 F.2d 1501 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>United States v. Baker</u>,

  63 F.3d 1478 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>United States v. Beamon</u>,

  992 F.2d 1009 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

<u>United States v. Christie</u>,

  10-00384SOM, 2010 WL 2900371 (D. Haw. July 20, 2010) . . . . . . . . . . . . 13

<u>United States v. Clymer</u>,

  25 F.3d  (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17, 18, 19

<u>United States v. Corona-Verbera</u>,

  509 F.3d 1105 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

<u>United States v. Diaz-Nivar</u>,

  No. CR 20-38-JD, 2020 WL 3848200 (D.N.H. July 8, 2020) . . . . . . . . . . . 20

<u>United States v. Gregory</u>,

1

322 F.3d 1157 (9th Cir. 2003) ................................. passim

United States v. Guerrero,

756 F.2d 1342 (9th Cir. 1984) ................................... 27

United States v. Haj-Hamed,

549 F.3d 1020 (6th Cir. 2008) ................................... 14

United States v. Hill,

254 F. App'x 405 (5th Cir. 2007) ............................... 14

United States v. King,

483 F.3d 969 (9th Cir. 2007) ............................... 22, 24

United States v. Krug,

666 F. App'x 665 (9th Cir. 2016) ............................... 27

United States v. Lam,

262 F.3d 1033 (9th Cir. 2001) ................................... 25

United States v. Lewis,

611 F.3d 1172 (9th Cir. 2010) ................................... 13

United States v. Loud Hawk,

474 U.S. 302 (1986) ........................................ 18, 25

United States v. Ly,

No. CR-00-0118, 2001 WL 1456751 (N.D. Cal. Nov. 14, 2001) .... 14, 17

United States v. Martinez-Alcala,

578 F. App'x 650 (9th Cir. 2014) ............................... 26

United States v. Medina,

524 F.3d 974 (9th Cir. 2008) ......................... 13, 15, 16, 18

United States v. Myers,

930 F.3d 1113 (9th Cir. 2019) ................................... 26

United States v. Nance,

666 F.2d 353 (9th Cir. 1982) ................................... 23

United States v. Nejdl,

773 F. Supp. 1288 (D. Neb. 1991) ............................... 15, 17

United States v. Pena-Carrillo,

46 F.3d 879 (9th Cir. 1995) ....................................... 20

United States v. Rutgard,

116 F.3d 1270 (9th Cir. 1997) ..................................... 14

United States v. Sandoval,

No. 2:05-CR-348-JCM, 2009 WL 348269 (D. Nev. Feb. 6, 2009) ....... 15

United States v. Sears, Roebuck & Co.,

877 F.2d 734 (9th Cir. 1989) ...................................... 22

United States v. Shetty,

130 F.3d 1324 (9th Cir.1997) ...................................... 24

United States v. Simmons,

536 F.2d 827 (9th Cir. 1976) ...................................... 28

United States v. Stewart,

390 F. App'x 657 (9th Cir. 2010) .................................. 19

United States v. Story,

131 F.3d 150 (9th Cir. 1997) ................................... 16, 19

United States v. Tanh Huu Lam,

251 F.3d 852 (9th Cir.) ........................................ 24, 26

United States v. Taylor,

487 U.S. 326 (1988) .................................. 11, 12, 15, 21

United States v. Townsend,

897 F.2d 989 (9th Cir. 1990) ...................................... 13

United States v. Turner,

926 F.2d 883 (9th Cir. 1991) ...................................... 25

United States v. White,

895 F.2d 1419 (9th Cir. 1990) .................................. 15, 18

United States v. Williams,

3

1   576 F.3d 1149 (10th Cir. 2009).................................... 19

**STATUTES**

18 U.S.C. § 3161............................................... 6

18 U.S.C. § 3161(c)(1)........................................ 11

18 U.S.C. § 3161(h)........................................... 12

18 U.S.C. § 3162(a)(2)........................................ 12

21 U.S.C. §§ 841(a)(1)..................................... 6, 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On July 6, 2017, a grand jury indicted defendant JEFFREY OLSEN ("defendant") on 35 counts, alleging that defendant prescribed and distributed large amounts of oxycodone, amphetamine salts, alprazolam, and hydrocodone to confidential sources, an undercover agent, and numerous addicts without a legitimate medical purpose over the course of three years.  (Dkt No. 1.)  After defendant requested eight continuances of the trial date, including one continuance over the objection of the government, and after substituting counsel 18 months after his initial appearance, defendant now moves for the dismissal of the indictment with prejudice based on alleged violations of the Speedy Trial Act and the Sixth Amendment.

The Court should deny the instant motion because it is premature.  The time limit under the Speedy Trial Act has not yet run.  Defendant cannot prospectively move to dismiss based on a violation that has not occurred.  However, if the Court is inclined to dismiss the case, the Court should dismiss without prejudice.  The seriousness of the drug-distribution charges, the facts and circumstances leading to the dismissal, including the COVID-19 pandemic, and the impact of reprosecution on the administration of justice all weigh in favor of dismissal without prejudice.  Similarly, defendant's Sixth Amendment arguments are unpersuasive because the length of the delay in this case is not excessive and the delay is attributable to defendant's own conduct, specifically, his successive requests for continuances and his decision to substitute counsel.  Moreover, defendant cannot establish actual prejudice.

## II.   STATEMENT OF FACTS

On July 6, 2017, a grand jury indicted defendant JEFFREY OLSEN ("defendant") on 34 counts for prescribing and distributing large amounts of oxycodone, amphetamine salts, alprazolam, and hydrocodone to confidential sources, an undercover agent, and numerous addicts without a legitimate medical purpose over the course of three years. (Dkt No. 1.)  The grand jury also indicted defendant on one count for providing false and fraudulent material information to the Drug Enforcement Administration ("DEA") in an application to obtain a federal controlled substance registration.  (Id.)  Of the 34 drug-distribution counts, 25 counts that relate to oxycodone and amphetamine salts, Schedule II controlled substances, carry a maximum penalty of 20 years.  21 U.S.C. §§ 841(a)(1), (b)(1)(C).  Two counts relating to hydrocodone, then a Schedule III narcotic drug controlled substance, carry a maximum penalty of 10 years, and seven counts relating to alprazolam, a Schedule IV controlled substance, carry a maximum penalty of 5 years.  Id. §§ 841(a)(1), (b)(1)(E), (b)(2).  Defendant was arraigned and made his first appearance before a judicial officer of the court on July 11, 2017.  (Dkt No. 10.)  The Speedy Trial Act, 18 U.S.C. § 3161, originally required that the trial commence on or before September 19, 2017.

On July 11, 2017, the Court set a trial date of September 5, 2017.  (Dkt No. 10.)  The parties filed four stipulations to continue the trial date and, in each stipulation, the parties agreed that defendant was making the request for the continuance (Dkt Nos. 18, 20, 22, 25 ["defendant moves to continue the trial date" and "[d]efendant requests the continuance"].)  Pursuant to stipulations filed by the parties, the Court continued the trial date from

6

1    September 5, 2017, to June 18, 2019.  (Dkt Nos. 19, 21, 23, 26.)  In
2    the Orders, the Court found the period from September 5, 2017, to
3    June 18, 2019, inclusive, to be excludable under the Speedy Trial
4    Act.  (Id.)

5         On February 21, 2019, defense counsel Courtney E. Pilchman and
6    Anita A. Kay filed an ex parte application to withdraw as defense
7    counsel.  (Dkt No. 27.)  In the application, prior counsel explained
8    that defendant had terminated their attorney-client relationship on
9    January 15, 2019, over 18 months after defendant's initial
10   appearance.  (Dkt No. 27, at 2.)  On March 1, 2019, the Court granted
11   the motion to withdraw and appointed the Federal Public Defender as
12   defense counsel.  (Dkt No. 28.)

13        The parties filed another stipulation to continue the trial
14   date, which stated that defendant was making the request for the
15   continuance (Dkt No. 34.)  On May 16, 2019, the Court continued the
16   trial date from June 18, 2019, to November 5, 2019.  (Dkt No. 35.)
17   The Court found the period from June 18, 2019, to November 5, 2019,
18   inclusive, excludable under the Speedy Trial Act.  (Id.)

19        On August 20, 2019, defendant filed an ex parte application to
20   continue the trial date, which the government opposed.  (Dkt No. 36.)
21   In the application, defense counsel declared that the discovery in
22   the case was complicated and large, involving "77,000 files which is
23   approximately 41 GB" relating to "conduct that spans over three
24   years," "include[ing] recordings of undercover patient visits and
25   thousands of prescriptions for patients named in the Indictment."
26   (Id. at 1.)  She explained that "it was extremely difficult for [her]
27   to review this amount of discovery and prepare for a trial," which is
28   why the parties filed a stipulation to continue the trial from June

10, 2019, to November 5, 2019.  (Id.)  Defense counsel declared that she needed additional time to "identify[] and retain[] an expert," and to get the expert knowledgeable about the case.  (Id. at 2.)

On September 3, 2019, at the hearing on the application, the government objected to a continuance and argued that the trial should proceed on November 5, 2019. (Dkt No. 51, Tr. at 4-5.)  Over the government's objection, the Court granted defendant's ex parte application and continued the trial date to May 5, 2020.  (Dkt Nos. 39, 40.)  The Court explained, "It's a serious case and I want to make sure she feels prepared and Mr. Olsen feels comfortable that his counsel is prepared." (Dkt. No. 51, Tr. at 8.)  The Court confirmed with defendant that he wanted to waive his right to a speedy trial: "I just want to confirm with you, you realize that, sir, you have the right to go to trial in November of this year, November 5th, 2019, and your lawyer . . . has indicated that . . . she needs time until May of next year to be ready for trial.  Are you agreeable to continuing your trial to May of next year so she can prepare?" (Id.) Defendant replied, "Yes, I am." (Id.)  The Court ordered the parties to file a stipulation to move the trial date from November 5, 2019, to May 5, 2020.  (Id.)  On September 19, 2019, the Court issued an order finding the time from November 5, 2019, to May 5, 2020, inclusive, to excludable.  (Dkt No. 42.)

On March 13, 2020, the Court entered a General Order suspending jury selection and jury trials scheduled to begin before April 13, 2020, because of the Coronavirus.  C.D. Cal. General Order No. 20-02, In Re: Coronavirus Public Emergency, Order Concerning Jury Trials and Other Proceedings (March 13, 2020).  On April 13, 2020, the Court entered a General Order further suspending jury selection, jury

8

1   trials, and meetings of the grand juries until June 1, 2020.  C.D.

2   Cal. General Order No. 20-05, In Re: Coronavirus Public Emergency,

3   Further Order Concerning Jury Trials and Other Proceedings (April 13,

4   2020).  On May 28, 2020, the Court entered a General Order to

5   continue suspending jury selection and jury trials.  C.D. Cal.

6   General Order No. 20-08, In Re: Coronavirus Public Emergency, Order

7   Concerning Phased Reopening of the Court (May 28, 2020).  On August

8   6, 2020, the Court entered a General Order closing the Courthouse to

9   the public and further suspending jury selection and jury trials.

10  C.D. Cal. General Order No. 20-09, In Re: Coronavirus Public

11  Emergency, Order Concerning Phased Reopening of the Court (August 6,

12  2020).

13         During this period when criminal jury trials were suspended, the

14  parties filed two stipulations to continue the trial date from May 5,

15  2020, to July 21, 2020, and from July 21, 2020, to October 13, 2020.

16  (Dkt Nos. 43, 45.)  The stipulations again provide that defendant was

17  making the requests to continue.  (Id.)  The Court moved the trial

18  date and found the time from May 5, 2020, to October 13, 2020,

19  inclusive, to be excluded in computing the time within which the

20  trial must commence under the Speedy Trial Act.  (Dkt Nos. 44, 46.)

21         On August 20, 2020, the Court held a status conference hearing.

22  At the hearing, defense counsel stated that defendant wanted to

23  proceed to trial on October 13, 2020.  (Dkt No. 52, Tr. at 3.)  The

24  government argued that, pursuant to General Order 20-09 and the

25  Speedy Trial Act, the ends of justice would be served by a

26  continuance.  (Id. at 4.)  The Court explained that it disagreed with

27  the decision by the majority of the district court judges to further

28  suspend jury trials and that it does not believe the COVID-19

pandemic justified a suspension of the right to a speedy trial. (Id. at 6-7.)  The Court concluded that the forthcoming Speedy Trial Act violation is not because of the government:

> "It breaks my heart that it's the Court that's saying we will not have jury trials.  It breaks my heart.  And I hear you.  You've been ready for trial in this case a long time. . . . And the executive branch is getting punished or the charges are being dismissed."

(Id. at 16.)  Government counsel argued that "the U.S. Attorney's Office doesn't control the Court" and cannot force the issuance of summons for jurors.  (Id. at 16, 17.)  He argued that it is "impossible . . . to have a jury trial" without the summons and that the forthcoming violation of the Speedy Trial Act is "not a result of the government or the U.S. Attorney's Office."  (Id.)  The Court agreed: "Right.  It's because of the judges."  (Id.)  Later in the hearing, the Court emphasized again, "It's not the government's fault.  I know the government's ready . . . ."  (Id. at 20.)

On August 28, 2020, the government filed an ex parte application to continue the trial date to December 1, 2020.  (Dkt No. 54.)  On September 2, 2020, the Court denied the application and requested that the Chief Judge issue jury summons.  (Dkt No. 67.)  The following day, the Chief Judge issued an order denying the request for jury summons.  (Dkt No. 68.)  During this period, defendant filed a motion to suppress statements – over three years after his initial appearance – and two motions in limine.  (Dkt Nos. 55, 58, 61.)

At a hearing on September 4, 2020, the Court stated that it would entertain a motion to dismiss for violation of defendant's speedy trial rights.  On September 15, 2020, defendant filed the instant motion.  (Dkt. No. 85.)  Based on the above procedural

10

1  history, the Speedy Trial Act currently requires that trial commence
2  on or before October 27, 2020.

3  **III. ARGUMENT**

4      **A.   Speedy Trial Act**

5      Defendant argues that the Court should dismiss the case with
6  prejudice because of violations of the Speedy Trial Act and the Sixth
7  Amendment.  (Mot. 5-7.)  Defendant is wrong.  His motion is premature
8  because the Speedy Trial Act has not been violated and, therefore,
9  the motion should be denied.  If the Court concludes otherwise and
10 believes dismissal is appropriate, then the Court should dismiss
11 without prejudice.  The seriousness of the drug-distribution charges,
12 the facts and circumstances leading to the dismissal, including a
13 once-in-a-lifetime pandemic, and the impact of reprosecution on the
14 administration of justice all counsel in favor of dismissal without
15 prejudice.

16     1.   <u>Legal Standard</u>

17     The Speedy Trial Act generally requires that a defendant's trial
18 commence within 70 days of the filing of the indictment or the
19 defendant's initial court appearance, whichever is later.  18 U.S.C.
20 § 3161(c)(1).  "If a defendant is not brought to trial within the
21 time limit required by section 3161(c) as extended by section
22 3161(h), the information or indictment shall be dismissed on motion
23 of the defendant."  <u>Id.</u> § 3162(a)(2).  Whether to dismiss with or
24 without prejudice is left to the "guided discretion of the district
25 court."  <u>United States v. Taylor</u>, 487 U.S. 326, 335 (1988).  The
26 statute does not prefer one remedy to the other.  <u>Id.</u>  The Speedy
27 Trial Act enumerates three factors, "among others," that must be
28 considered in deciding whether to dismiss with or without prejudice:

11

1  "seriousness of the offense; the facts and circumstances of the case

2  which led to the dismissal; and the impact of a reprosecution on the

3  administration of this chapter and on the administration of justice."

4  18 U.S.C. § 3162(a)(2).  The defendant has the burden of proof for a

5  motion to dismiss based on a Speedy Trial Act violation.  <u>Id.</u>

6           2.  <u>No Speedy Trial Act Violation Has Occurred</u>

7      Defendant's motion to dismiss should be denied as premature

8  because the Speedy Trial Act has not been violated.  Defendant

9  concedes that no such violation currently exists and that, at the

10 earliest, the violation would occur on October 28, 2020, assuming the

11 Court decides all pending pretrial motions.  (Mot. at 4.)  The Speedy

12 Trial Act makes clear that the time limit to bring defendant to trial

13 must run first and that a violation is a necessary condition before

14 the Court may dismiss under the statute.  18 U.S.C. § 3162(a)(2) ("<u>If</u>

15 a defendant is not brought to trial within the time limit required")

16 (emphasis added).  Defendant cannot prospectively move to dismiss a

17 case before the time limit has expired, especially where, as

18 defendant concedes, changed circumstances may extend the time limit.

19 <u>See</u> 18 U.S.C. § 3161(h).

20           3.  <u>Seriousness Of The Offenses</u>

21     If the Court is inclined to dismiss the case based on the

22 forthcoming Speedy Trial Act violation, then the Court should dismiss

23 without prejudice because all the statutory factors weigh in favor of

24 permitting reprosecution.  The first factor – the seriousness of the

25 offense – militates in favor of dismissal without prejudice.

26     "Possession, use, and distribution of illegal drugs represent

27 one of the greatest problems affecting the health and welfare of our

28 population."  <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1002 (1991)

                                    12

1  (Kennedy, J., concurring) (quotation marks omitted).  The Ninth

2  Circuit and district courts in this circuit have held that drug

3  distribution is a serious crime.  See United States v. Medina, 524

4  F.3d 974, 987 (9th Cir. 2008) (affirming dismissal without prejudice

5  pursuant to the Speedy Trial Act because the district court found

6  conspiracy and drug-distribution charges were serious); Taylor v.

7  Lewis, 460 F.3d 1093, 1099 (9th Cir. 2006) (affirming a "three

8  strikes" sentence of 25 years to life because the triggering offense

9  of possessing 0.036 grams of cocaine was a serious offense); United

10  States v. Christie, 10-00384SOM, 2010 WL 2900371, at *4 (D. Haw. July

11  20, 2010) ("The nature of the offense weighs strongly in favor of

12  detention, as the distribution of drugs is a serious offense.")

13  (citing United States v. Townsend, 897 F.2d 989, 994 (9th Cir.

14  1990)).

15      As the Court found at the September 3, 2019 hearing, the instant

16  case is "serious."  (Dkt. No. 51, Tr. at 8.)  Defendant is charged

17  with 34 counts of prescribing and distributing controlled substances,

18  namely, oxycodone, amphetamine salts, alprazolam, and hydrocodone.

19  Twenty-five counts that relate to oxycodone and amphetamine salts

20  carry a maximum penalty of 20 years, two counts relating to

21  hydrocodone carry a maximum penalty of 10 years, and seven counts

22  relating to alprazolam carry a maximum penalty of 5 years.  21 U.S.C.

23  §§ 841(a)(1), (b)(1)(C), (b)(1)(E), (b)(2).  The maximum penalties

24  for the charges establish the seriousness of the offenses.  See

25  Medina, 524 F.3d at 987; United States v. Lewis, 611 F.3d 1172, 1180

26  (9th Cir. 2010) (finding six counts of intentional importation of

27  protected species "'serious' within the context of the Speedy Trial

28  Act "because they carried maximum penalties of five years).

Defendant's offenses are, in fact, more serious and reprehensible than the average drug-related offense because he abused his position of trust as a licensed physician to perpetrate his crimes.  See United States v. Hill, 254 F. App'x 405, 407 (5th Cir. 2007) (affirming the above-guidelines sentence of 200 months' imprisonment based, in part, on "the need for the sentence to reflect the seriousness of the offense" because "of the abuse of [the defendant's] position of trust and his medical license" and because "he was 'a drug dealer with a medical license'").  Moreover, he prescribed dangerous drugs to people whom he knew or should have known were addicts in order to line his pockets.  See United States v. Rutgard, 116 F.3d 1270, 1293 (9th Cir. 1997) ("That he took advantage of vulnerable victims and abused trust was established because, in a professional medical practice, trust between patient and physician is essential . . . ."); United States v. Haj-Hamed, 549 F.3d 1020, 1025 (6th Cir. 2008) (holding that the defendant "breached the trust given to him as a physician by selling prescriptions to the most vulnerable in our population for his own profit") (quotation marks and citations omitted).

Defendant's reliance on United States v. Clymer, 25 F.3d 831 (9th Cir. 1994), is misplaced.  (Mot. at 5.)  First, even in Clymer, the Ninth Circuit concluded that the drug offenses in the case (conspiracy to distribute and aiding and abetting the manufacture of methamphetamine) were "undoubtedly serious," which weighed against dismissal with prejudice.  See Clymer, 25 F.3d at 831.  Second, "Clymer is an anomaly.  Persuasive, though not binding, precedent reveals that 'dismissal without prejudice is the rule' for drug offenses."  United States v. Ly, No. CR-00-0118, 2001 WL 1456751, at

14

1   *3 (N.D. Cal. Nov. 14, 2001) (citing United States v. Nejdl, 773 F.
2   Supp. 1288, 1298 (D. Neb. 1991)).  The Supreme Court adopted this
3   approach in Taylor, 487 U.S. at 343-44, reversing the decisions of
4   the district court and Court of Appeals and dismissing a defendant's
5   drug-related charges without prejudice because of a 15-day violation
6   of the Speedy Trial Act.

7       Accordingly, the seriousness of the charged offenses supports a
8   dismissal without prejudice.

9            4.   Facts And Circumstances Leading To Dismissal

10      The second factor, specifically, the facts and circumstances
11  leading to dismissal, similarly favors dismissal without prejudice.

12      In reviewing the circumstances of the case leading to dismissal,
13  the absence of evidence "that the Government acted in bad faith" or
14  of "any pattern of neglect" weighs in favor of dismissal without
15  prejudice.  Taylor, 487 U.S. at 339; United States v. White, 895 F.2d
16  1419 (9th Cir. 1990) (dismissal without prejudice was appropriate
17  because "[n]o showing was made that the prosecutor acted negligently
18  or in bad faith").  Moreover, dismissal without prejudice is
19  appropriate where the defendant contributed to the unexcused delay or
20  agreed to continuances leading up to the dismissal.  Taylor, 487 U.S.
21  at 339 (the defendant's "failure to appear" when the "Government was
22  prepared to go to trial on the 69th day of the indictment-to-trial
23  period" was "certainly relevant as 'circumstances of the case which
24  led to the dismissal,' and weigh[ed] heavily in favor of permitting
25  reprosecution") (citation omitted); Medina, 524 F.3d at 981-82
26  (affirming dismissal without prejudice where "the continuances had
27  been agreed to by defense counsel"); United States v. Sandoval, No.
28  2:05-CR-348-JCM, 2009 WL 348269, at *1 (D. Nev. Feb. 6, 2009)

(denying motion to dismiss because the defendant "was substantially responsible for any pre-trial delay" because "[s]ix separate stipulations were filed extending the trial date at [the defendant]'s request"). Circumstances such as the brevity of the unexcludable delay and whether defendant is out on bond support dismissal without prejudice. See Medina, 524 F.3d at 987 (concluding that a violation of the Speedy Trial Act is more serious when "the defendant is in detention pending the outcome of his criminal case"). Finally, where there is no evidence of prejudice to the defendant, the government should be allowed to reprosecute. United States v. Story, 131 F.3d 150 (9th Cir. 1997) (affirming dismissal without prejudice where the defendant "suffered no actual prejudice and that some of the delay could be attributed directly to [the defendant], such as his late substitution of a lawyer").

Here, dismissal should be without prejudice because, if a violation of the Speedy Trial Act occurs, it would not have been the result of bad faith or negligence by the government. The Court has already found that "[i]t's not the government's fault. . . . [and that] the government's ready [for trial]." (Dkt No. 52, Tr. at 20.) A jury trial by October 27, 2020, is not possible because the Court is not issuing summons for jurors in light of the COVID-19 pandemic. (Dkt No. 68; see also Dkt No. 52, Tr. at 16 ("It breaks my heart that it's the Court that's saying we will not have jury trials. It breaks my heart. And I hear you. You've been ready for trial in this case a long time. . . ."). The circumstances leading up to the forthcoming Speedy Trial Act violation - a once in a lifetime worldwide pandemic that no one foresaw and the decision of the

majority of the district judges not to permit jury trials – weigh

strongly in favor of dismissal without prejudice.

Further, dismissal without prejudice is appropriate because

defendant contributed to the delay and agreed to continuances leading

up to the dismissal.  On January 15, 2019, approximately 18 months

after defendant's initial appearance, he terminated his attorney-

client relationship with prior counsel.  (Dkt No. 27, at 2.)  On

March 1, 2019, the Court appointed the Federal Public Defender as

defense counsel.  (Dkt No. 28.)  Defendant requested eight

continuances of the trial date, including one over the objection of

the government.  On August 20, 2019, prior to the pandemic, defendant

filed an ex parte application to continue the trial date.  (Dkt No.

36.)  On September 3, 2019, at the hearing on the application, the

government objected to a continuance and argued that the trial should

proceed on November 5, 2019.  (Dkt No. 51, Tr. at 4-5.)  Over the

government's objection, the Court granted defendant's ex parte

application and continued the trial date.  (Dkt Nos. 39, 40.)  Under

these circumstances, where defendant contributed to the delay and

requested eight continuances, dismissal should be without prejudice.

In addition, the fact that no Speedy Trial Act violation

currently exists and the fact that defendant is not detained pending

trial weigh in favor of dismissal without prejudice.  The Speedy

Trial Act has not yet been violated.  Even if the Court were to

dismiss the case a month after October 27, 2020, such brevity of non-

excludable delay would support dismissal without prejudice.  Ly, 2001

WL 1456751, at *3 ("[W]here the violation of the Act involves months,

dismissal without prejudice is the remedy most ofte[n] selected for

drug cases.") (quoting Nejdl, 773 F. Supp. at 1298); Clymer, 25 F.3d

17

at 832 (relying on "a delay of five months" of non-excludable delay to conclude that the case should be dismissed with prejudice); White, 895 F.2d at 1419 (citing United States v. Arango, 879 F.2d 1501, 1508 (7th Cir. 1989) and concluding that "three-month delay not per se substantial enough to justify dismissal with prejudice").  This is especially true, here, because defendant has not been detained pending trial.  He has not been deprived of his liberty since his initial appearance.  See Medina, 524 F.3d at 987 (affirming dismissal without prejudice even where defendant spent 21 unexcused days in detention).

More importantly, defendant has not suffered any actual prejudice to his trial preparation.  (Mot. at 7.)  Defendant does not claim that a material witness cannot be located or that evidence has been lost.  Clymer, 25 F.3d at 832 (finding prejudice because "one of [the defendant]'s former co-defendants, who had agreed to testify on his behalf, could no longer be located").  Instead, defendant argues that he has "lived with major disruption to his employment, drain on his financial resources, subjection to public obloquy, and anxiety." (Mot. at 7.)  He, however, has offered no proof of these speculative injuries and ignores the fact that he himself contributed to them by requesting eight continuances of the trial date.  United States v. Loud Hawk, 474 U.S. 302, 315 (1986) ("[P]ossibility of prejudice is not sufficient to support respondents' position that their speedy trial rights were violated.").  Defendant complains about effects that almost all defendants experience in a criminal case.  He has not established that these harms are the direct result of the forthcoming Speedy Trial Act violation.  United States v. Gregory, 322 F.3d 1157, 1163 (9th Cir. 2003) ("The prejudice with which we are concerned is

18

prejudice caused by the delay . . . not simply any prejudice that may have occurred before the trial date but unrelated to the fact of the delay itself."); <u>United States v. Williams</u>, 576 F.3d 1149, 1159 (10th Cir. 2009) ("[T]he prejudice that a defendant must establish to seek a dismissal with prejudice for a Speedy Trial Act violation must be caused by that violation."). Thus, even if true, such effects on defendant did not rise to an unfair constraint on his liberty interests and does not support dismissal with prejudice. <u>United States v. Stewart</u>, 390 F. App'x 657, 657-58 (9th Cir. 2010) (affirming dismissal without prejudice because "the delay did not impede [the defendant]'s ability to prepare a defense or otherwise unfairly constrain his liberty").

Accordingly, the facts and circumstances leading up to the forthcoming Speedy Trial Act violation support dismissal without prejudice.

> 5.   <u>Impact Of Reprosecution On The Administration Of Justice</u>

The third factor, the impact of reprosecution on the administration of justice, weigh in favor of dismissal without prejudice.

The "most severe sanction [of dismissal with prejudice] is appropriate where . . . [the] district courts and United States Attorneys' offices have failed to recognize or implement . . . long-standing precedents." <u>Clymer</u>, 25 F.3d at 832. "[R]eprosecution would not negatively impact the administration of the act or of justice generally" where "there was no evidence of any intention to harass by repeated indictments and/or by delay," <u>Story</u>, 131 F.3d at 150, or where there was "no evidence of purposeful wrongdoing on the

part of the prosecutor," <u>United States v. Pena-Carrillo</u>, 46 F.3d 879, 882 (9th Cir. 1995).  In such cases, "[t]he purpose of deterring prosecutorial misconduct and delay would be little served by barring reprosecution in this case."  <u>Id.</u> at 883.

Here, neither the Court nor the U.S. Attorney's Office is ignoring long-standing precedents.  The Court has explained that reasonable jurists have differing opinions on whether the Speedy Trial Act permits an ends-of-justice continuance based on the COVID-19 pandemic.  ((Dkt No. 51, Tr. at 9 ["[M]y position, which is disagreed to by the great majority of the judges in Downtown Los Angeles, is the [C]onstitution requires that we go forward."].)  Almost every court that has addressed the impact of COVID-19 on a defendant's speedy trial right has concluded that time should be excluded in the interest of justice.  <u>See, e.g.</u>, <u>United States v. Diaz-Nivar</u>, No. CR 20-38-JD, 2020 WL 3848200, at *3 (D.N.H. July 8, 2020) (collecting district court cases from multiple jurisdictions).  Moreover, as stated above, the Court has determined that the government did not cause the forthcoming Speedy Trial Act violation and that the violation is not the result of bad faith or negligence.  (Dkt No. 52, Tr. at 16, 20.)  The delay here is also not serious or severe; indeed, the Speedy Trail Act violation has not yet even occurred.

To conclude, the Court should deny defendant's motion to dismiss because it is premature and no violation under the Speedy Trial Act has occurred.  If the Court were inclined to dismiss for a violation of the Speedy Trial Act, the Court should dismiss without prejudice because defendant is charged with serious offenses, there is no evidence that the government has acted in bad faith or negligently,

1  defendant contributed to the delay and agreed to continuances leading

2  up to the dismissal, and defendant has not established any actual

3  prejudice by the forthcoming violation.  "Dismissal without prejudice

4  is not a toothless sanction: it forces the Government to obtain a new

5  indictment if it decides to reprosecute, and it exposes the

6  prosecution to dismissal on statute of limitations grounds.  Taylor,

7  487 U.S. at 342.

8      **B.   Sixth Amendment**

9      Defendant also alleges that his Sixth Amendment right to a

10  speedy trial has been violated.  (Mot. 7-8.)  His argument is

11  unavailing because the length of the delay in this case is not

12  excessive and the delay is attributable to defendant's own conduct,

13  specifically, his successive requests for continuances and his

14  decision to substitute counsel.  Moreover, defendant cannot establish

15  actual prejudice.

16      1.   Legal Standard

17      The Sixth Amendment guarantees that "[i]n all criminal

18  prosecutions, the accused shall enjoy the right to a speedy and

19  public trial."  Under Barker v. Wingo, 407 U.S. 514, 530 (1972), the

20  courts review four factors in determining whether a defendant has

21  been deprived of his right to a speedy trial: (1) the length of the

22  delay; (2) the reason for the delay; (3) the defendant's assertion of

23  his right to a speedy trial; and (4) the prejudice to the defendant.

24  "[N]one of the four factors identified [is] either a necessary or

25  sufficient condition to the finding of a deprivation of the right of

26  speedy trial.  Rather, they are related factors and must be

27  considered together with such other circumstances as may be

28  relevant."  Barker, 407 U.S. at 533.

2.   <u>Length Of Delay</u>

The first <u>Barker</u> factor, the length of the delay, does not weigh heavily in defendant's favor.

The length of the delay "is a threshold issue." <u>United States v. Gregory</u>, 322 F.3d 1157, 1161 (9th Cir. 2003).  Under the Sixth Amendment, delay is measured from "the time of the indictment to the time of trial." <u>United States v. Sears, Roebuck & Co.</u>, 877 F.2d 734, 739 (9th Cir. 1989).  "Although there is no bright-line rule, courts generally have found that delays approaching one year are presumptively prejudicial" that require inquiry into the other <u>Barker</u> factors. <u>Gregory</u>, 322 F.3d at 1161-62.  The length is considered in light of "the seriousness of the charges, the volume of discovery, and the [complexity of the] evidence involved." <u>Doyle v. Law</u>, 464 F. App'x 601, 603 (9th Cir. 2011).

Here, the length of the delay calculated from the time of the indictment to October 27, 2020, is approximately 40 months.  This amount of delay is not excessive, especially in light of the seriousness of the charges, the volume of discovery, and the complexity of the evidence involved. <u>United States v. King</u>, 483 F.3d 969, 976 (9th Cir. 2007) (holding that "nearly two years" was "not excessive" and "d[id] not seriously weigh in [the defendant]'s favor"); <u>Gregory</u>, 322 F.3d at 1162 ("Given that the [22-month] delay was not excessively long . . . it does not weigh heavily in [the defendant]'s favor.").  As explained above, defendant is facing 34 counts of prescribing and distributing controlled substances, namely, oxycodone, amphetamine salts, alprazolam, and hydrocodone.  These counts carry maximum penalties ranging from 5 to 20 years'

1    imprisonment.  The Court has concluded that it is a "serious" case.

2    (Dkt. No. 51, Tr. at 8.)

3         As conceded by defense counsel in a prior court filing, the case

4    involves an extraordinary volume of discovery and complicated

5    evidence that require the retaining of an expert.  The instant case

6    involves 35 counts relating to conduct that spans over 3 years and

7    the discovery contains approximately 77,000 files, which is about 41

8    GB.  (Dkt No. 36.)  Because these files include recordings of

9    undercover patient visits and thousands of prescriptions for patients

10   named, the parties had to retain experts to review and analyze the

11   evidence.  (See Id.)

12        More importantly, there has not been any violation of the Speedy

13   Trial Act.  The Ninth Circuit has held that "it will be an unusual

14   case in which the time limits of the Speedy Trial Act have been met

15   but the sixth amendment right to speedy trial has been violated."

16   United States v. Nance, 666 F.2d 353, 360 (9th Cir. 1982); United

17   States v. Baker, 63 F.3d 1478, 1497 (9th Cir. 1995) ("Speedy Trial

18   Act affords greater protection to a defendant's right to a speedy

19   trial than is guaranteed by the Sixth Amendment, and therefore a

20   trial which complies with the Act raises a strong presumption of

21   compliance with the Constitution.").  Therefore, a strong presumption

22   of compliance with the Sixth Amendment applies to the case at hand.

23        As such, the length of the delay does not substantially weigh in

24   defendant's favor.

25             3.   The Reason For The Delay

26        The second Barker factor, the reason for the delay, weighs

27   substantially against a finding that the Sixth Amendment has been

28   violated.

                                   23

"[T]he reason for the delay . . . is the focal point of the [Barker] inquiry." King, 483 F.3d at 976. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." Barker, 407 U.S. at 531. Whereas, "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily." Id. "[A] valid reason, such as a missing witness, should serve to justify appropriate delay." Id. "On the other hand, delay attributable to the defendant's own acts or to tactical decisions by defense counsel will not bolster defendant's speedy trial argument." McNeely v. Blanas, 336 F.3d 822, 827 (9th Cir. 2003).

In King, the Ninth Circuit held that the second Barker factor weighed heavily against a Sixth Amendment violation. There, the district court had "granted continuances at the request of [the defendant] and his attorney." King, 483 F.3d at 976. The case was also extraordinarily complex, involving banking and identity-theft conspiracy. Id. The district judge even explained to the defendant his the right to a speedy, after which the defendant agreed to continuances. Id. Furthermore, "substituted a new attorney halfway through the proceedings, which necessarily required the judge to allow extra time for new counsel to prepare." Id. Under these circumstances, the Ninth Circuit held that there was no violation of the Sixth Amendment. Id. at 977.

The instant case mirrors King remarkably. Here, defendant requested eight continuances, including one over the objections of the government. See United States v. Shetty, 130 F.3d 1324, 1331 (9th Cir.1997) (reversal of conviction on speedy trial grounds not warranted where defendant stipulated to continuances); United States

24

v. Tanh Huu Lam, 251 F.3d 852, 857 (9th Cir.), as amended on denial
of reh'g and reh'g en banc sub nom. United States v. Lam, 262 F.3d
1033 (9th Cir. 2001) (where defense counsel asked for continuances
and repeatedly stipulated to the case's complexity).  This case, like
King, is complex, requiring expert opinion.  Like the defendant in
King, defendant here substituted new counsel nearly 18 months after
defendant's initial appearance, which prevented the trial from
proceeding on June 10, 2019.  (Dkt Nos. 27, 36.)  Similar to the
district court in King, the Court informed defendant of his speedy
trial rights, after which defendant agreed to a continuance.  (Dkt.
No. 51, Tr. at 8.)  Further, the Court has also held that the
government is not at fault for the delay since the Court at large
decided not to conduct jury trials.  (Dkt No. 52, Tr. at 16, 20.)
Thus, the second Barker factor substantially tilts in favor of
finding no Sixth Amendment violation.

4.   Defendant's Assertion Of His Right

The third Barker factor does not weigh in favor of defendant.

"[A] defendant's assertion of or failure to assert his right to
a speedy trial is one of the factors to be considered in an inquiry
into the deprivation of the [Sixth Amendment] right."  Barker, 407
U.S. at 528.  "[A]n improper or untimely assertion of speedy trial
rights may weigh in favor of rejecting a defendant's motion to
dismiss for violation of these rights, [but] the mere fact of proper,
timely assertion does not warrant dismissal."  United States v.
Turner, 926 F.2d 883, 889 (9th Cir. 1991).  "These assertions,
however, must be viewed in the light of respondents' other conduct."
United States v. Loud Hawk, 474 U.S. 302, 314 (1986).  Where the
defendant made "successive requests for continuances" and was

1  "responsible for much of the delay," this factor is weighed against

2  the defendant.  Lam, 251 F.3d at 859.

3       As previously established, defendant was responsible for all of

4  the delay in this case.  Defendant requested eight continuances of

5  the trial date.  When the government sought to try him in November

6  2019, he objected and filed an ex parte application to continue the

7  trial.  Defendant also waited 18 months to substitute his prior

8  counsel and waited over three years before filing a motion to

9  suppress.  Based on his successive requests for continuances and

10 responsibility in causing the delay, the third Barker factor counsel

11 in favor of finding no Sixth Amendment violation.

12           5.   Prejudice To Defendant

13       Because defendant cannot prove prejudice, the fourth Barker

14 factor militates against a dismissal on Sixth Amendment grounds.

15       "[W]hether actual prejudice must be shown for delays caused by

16 the government's negligence depends on the length of the delay and

17 the facts of the case."  United States v. Martinez-Alcala, 578 F.

18 App'x 650, 651 (9th Cir. 2014).  "In certain extreme circumstances,

19 'when the delay is great and attributable to the government,' the

20 defendant need not show prejudice."  United States v. Myers, 930 F.3d

21 1113, 1120 n.5 (9th Cir. 2019) (quoting Gregory, 322 F.3d at 1162-

22 63.)  "Where the delay is not 'great,' on the other hand, courts may

23 require a showing of prejudice, even where each factor weighs in

24 favor of the defendant."  Martinez-Alcala, 578 F. App'x at 651; see

25 also Gregory, 322 F.3d at 1165 (holding that a 22-month delay did not

26 excuse the defendant from demonstrating actual prejudice).  Thus, the

27 Court must "weigh the reasons for and the extent of the delay against

28

1   the evidence of actual prejudice." <u>United States v. Beamon</u>, 992 F.2d

2   1009, 1013 (9th Cir. 1993).

3        Here, the delay from indictment to October 27, 2020, (about 40

4   months) is not great.  More importantly, all of the delay is

5   attributable to defendant.  Defendant requested eight continuances up

6   to October 13, 2020.  Any delay, thereafter, is also not attributable

7   to the government.  The Court at large has determined that jury

8   trials cannot proceed without placing prospective jurors, courtroom

9   staff, counsel, and litigants at risk.  (Dkt No. 68.)  The government

10  cannot compel the Court to issue summons for jurors.  (Dkt No. 52,

11  Tr. at 16-17.)  Because the delay is attributable to defendant,

12  defendant must still establish actual prejudice.  <u>United States v.</u>

13  <u>Krug</u>, 666 F. App'x 665, 667-68 (9th Cir. 2016) (34-month delay, with

14  20 months attributable to government negligence, did not relieve

15  defendant from showing actual prejudice).

16       Defendant cannot show actual prejudice.  He has not been

17  detained pending trial.  He alleges no loss of evidence or material

18  witnesses.  All that defendant can claim is that he has suffered

19  "great stress and anxiety" and has not been able to prescribe

20  controlled substances.  (Mot. at 8.)  However, as stated above,

21  defendant cannot attribute these alleged prejudices to the speedy

22  trial violation.  Gregory, 322 F.3d at 1163; <u>United States v.</u>

23  <u>Guerrero</u>, 756 F.2d 1342, 1350 (9th Cir. 1984) (Sixth Amendment claim

24  failed where the defendant "has not sufficiently shown any causal

25  relationship between the delay and the unavailability of two

26  witnesses who [the defendant] claims would have testified to being

27  with him on the day of the robbery").  The alleged "stress and

28  anxiety" defendant asserts resulted from the fact of his arrest, not

27

1   from any delay.  <u>United States v. Simmons</u>, 536 F.2d 827, 831–32 (9th

2   Cir. 1976) ("Conclusory allegations of general anxiety and depression

3   are present in almost every criminal prosecution.  We find nothing in

4   the record which distinguishes the emotional strain experienced by

5   Simmons from other criminal defendants.").  Similarly, his alleged

6   "financial instability" caused by his inability to prescribe

7   controlled substances – a bond condition meant to protect the public

8   – is speculative and not a result of a delay caused by the

9   government.  <u>United States v. Corona-Verbera</u>, 509 F.3d 1105, 1113

10   (9th Cir. 2007) (no actual prejudice where defendant offered no non-

11   speculative proof of how defense impaired)

12      Accordingly, defendant must establish actual prejudice and he

13   has failed to do so.

14 **IV.  CONCLUSION**

15      For the foregoing reasons, defendant's motion to dismiss should

16   be denied as premature because no Speedy Trial Act or Sixth Amendment

17   violation has occurred.  If the Court is inclined to dismiss the

18   case, the Court should dismiss without prejudice.