**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 23 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    20-50329 |
| Plaintiff-Appellant, | D.C. Nos.<br>8:17-cr-00076-CJC-1<br>8:17-cr-00076-CJC |
| v. | |
| JEFFREY OLSEN, | |
| Defendant-Appellee. | OPINION |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted March 18, 2021
San Francisco, California

Before:  Mary H. Murguia and Morgan Christen, Circuit Judges, and Barbara M.
G. Lynn,[*] District Judge.

Per Curiam Opinion

PER CURIAM:

The COVID-19 pandemic has presented courts with unprecedented

challenges.  Among these challenges is determining when and how to conduct jury

trials without endangering public health and safety and without undermining the

_____

[*]    The Honorable Barbara M. G. Lynn, Chief United States District Judge
for the Northern District of Texas, sitting by designation.

constitutional right to a jury trial.  The United States appeals from the district court's dismissal with prejudice of an indictment against Defendant Jeffrey Olsen.  Olsen was indicted in July 2017 on thirty-four counts related to the unlawful distribution of opioids.  He has since remained on pretrial release and has obtained eight continuances of his trial date, most recently scheduled for October 13, 2020.  After the Central District of California suspended jury trials due to the COVID-19 pandemic in March 2020, Olsen invoked, for the first time, his right to a speedy trial. Because jury trials were suspended, the government requested a continuance of Olsen's trial under 18 U.S.C. § 3161(h)(7)(A)—the Speedy Trial Act's "ends of justice" provision.  The district court denied the request and, ultimately, dismissed the charges against Olsen with prejudice, concluding that continuances under the ends of justice provision are appropriate only if holding a criminal jury trial would be impossible.  Because the district court erred in its reading of 18 U.S.C. § 3161(h)(7)(A), we reverse with instructions to reinstate Olsen's indictment, grant an appropriate ends of justice continuance, and set this case for trial.

## I.

## A.

We have jurisdiction under 18 U.S.C. § 3731.  We review de novo a district court's decision to dismiss on Speedy Trial Act grounds and its findings of fact for clear error.  *United States v. Henry*, 984 F.3d 1343, 1349–50 (9th Cir. 2021) (citing

*United States v. King*, 483 F.3d 969, 972 n.3 (9th Cir. 2007)).  A district court's ends of justice determination will be reversed only if it is clearly erroneous.  *United States v. Murillo*, 288 F.3d 1126, 1133 (9th Cir. 2002).

## B.

The Sixth Amendment guarantees all criminal defendants "the right to a speedy and public trial."  U.S. Const. amend. VI.  Despite this guarantee, however, the Sixth Amendment does not prescribe any specified length of time within which a criminal trial must commence.  *See id.*  To give effect to this Sixth Amendment right, Congress enacted the Speedy Trial Act, which sets specified time limits after arraignment or indictment within which criminal trials must commence.  Pub. L. No. 93-619, 88 Stat. 2076 (1975); *see Furlow v. United States*, 644 F.2d 764, 768–69 (9th Cir. 1981) (per curiam) (describing the Speedy Trial Act as the Sixth Amendment's "implementation").

As relevant here, the Speedy Trial Act requires that a criminal trial begin within seventy days from the date on which the indictment was filed, or the date on which the defendant makes an initial appearance, whichever occurs later.  18 U.S.C. § 3161(c)(1).  Recognizing the need for flexibility depending on the circumstances of each case, however, the Speedy Trial Act "includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start."  *Zedner v. United States*, 547 U.S. 489, 497 (2006); *see* 18 U.S.C. § 3161(h).

A court may exclude periods of delay resulting from competency examinations, interlocutory appeals, pretrial motions, the unavailability of essential witnesses, and delays to which the defendant agrees.  18 U.S.C. § 3161(h).  The Speedy Trial Act also includes an ends of justice provision, allowing for the exclusion of time where a district court finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  *Id.* § 3161(h)(7)(A).  In determining whether the ends of justice outweigh the best interest of the public and the defendant in a speedy trial, the district court must evaluate, "among others," several enumerated factors.  *Id.* § 3161(h)(7)(B)(i)–(iv).  Most relevant to our analysis is the first enumerated factor: "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice."  *Id.* § 3161(h)(7)(B)(i).

## II.

### A.

The global COVID-19 pandemic has proven to be extraordinarily serious and deadly.[1]  In response, many state and local governments entered declarations

---

[1] As of April 2021, there have been over 141 million confirmed COVID-19 cases and over 3 million COVID-19 related deaths globally.  Over 31 million of those cases are from the United States, with well over half a million deaths.  And as of April 2021, California alone has confirmed over 3.6 million cases, with nearly 60,000 deaths.

curtailing operations of businesses and governmental entities that interact with the public.  Beginning on March 13, 2020, the Central District of California—in light of the exigent circumstances brought on by the pandemic and the emergencies declared by federal and state officials—issued a series of emergency orders.[2]  Vital to this appeal is the Central District's suspension of criminal jury trials, which began on March 13, 2020.  *See* C.D. Cal. General Order 20-02 (March 17, 2020); *see also* C.D. Cal. General Order 20-05 (April 13, 2020); C.D. Cal. Amended General Order 20-08 (May 28, 2020); C.D. Cal. General Order 20-09 (August 6, 2020); C.D. Cal. General Order 21-03 (March 19, 2021).[3]

Each order was entered upon unanimous or majority votes of the district judges of the Central District with the stated purpose "to protect public health" and "to reduce the size of public gatherings and reduce unnecessary travel," consistent with the recommendations of public health authorities.  C.D. Cal. General Order 20-

---

[2] Among these was the Central District of California's declaration of a judicial emergency pursuant to 18 U.S.C. § 3174, which this Circuit's Judicial Council subsequently approved.  *See In re Approval of Jud. Emergency Declared in the Cent. Dist. of Cal.*, 955 F.3d 1140, 1141 (9th Cir. 2020) ("*Judicial Emergency*").  The emergency period runs until April 13, 2021 and extends the Speedy Trial Act's 70-day time limit for commencing trial to 180 days for defendants indicted between March 13, 2020 and April 13, 2021 and "detained solely because they are awaiting trial."  *Id.* at 1141–42; 18 U.S.C. § 3174(b).  Because Olsen was indicted before the suspension, the 180-day period does not apply, and he is subject to the ordinary Speedy Trial Act time limit.

[3] The General Orders are accessible at https://www.cacd.uscourts.gov/news/coronavirus-covid-19-guidance.

02 at 1; C.D. Cal. General Order 20-05 at 1; C.D. Cal. Amended General Order 20-08 at 1; C.D. Cal. General Order 20-09 at 1.  Most recently, on April 15, 2021, the Central District issued a general order explaining that jury trials will commence in the Southern Division, where the presiding judge in this action sits, on May 10, 2021. C.D. Cal. General Order 21-07.[4]

## B.

## 1.

Jeffrey Olsen, a California-licensed physician, is accused of illegally prescribing opioids.  Following an investigation that began in January 2011, Olsen was indicted in July 2017 in the Central District of California on thirty-four counts related to illegal distribution of oxycodone, amphetamine salts, alprazolam, and hydrocodone, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), (b)(1)(E), and (b)(2), and furnishing false and fraudulent material information to the U.S. Drug Enforcement Administration in violation of 21 U.S.C. § 843(a)(4)(A).  According to the government, Olsen was aware that at least two of his patients had died of prescription drug overdoses, while he continued prescribing dangerous combinations and unnecessary amounts of opioids to his patients.

---

[4] The Central District of California includes the Western, Eastern and Southern divisions.  At all relevant times, Olsen's case was based out of the Southern Division, located in Santa Ana, California.

Olsen made his initial appearance and was arraigned on July 11, 2017. Because the Speedy Trial Act required that Olsen's trial commence on or before September 19, 2017, the district court set trial for September 5, 2017. Olsen pleaded not guilty, and a magistrate judge set a $20,000 unsecured appearance bond; Olsen posted the bond and has since remained out of custody.

## 2.

Since Olsen's indictment and release on bond in 2017, there have been eight continuances of his trial date, which has postponed trial for over three years. The first five continuances were reached by stipulation with the government. Before the fifth stipulation, Olsen fired his retained counsel who had represented him since his initial appearance, and the district court appointed the Federal Public Defender as replacement counsel. These five stipulations continued Olsen's trial from September 5, 2017 to November 5, 2019. On August 20, 2019, Olsen sought a sixth continuance, which the district court granted over the government's objection, and continued Olsen's trial to May 5, 2020. After the court granted this continuance, the COVID-19 pandemic hit the United States in March 2020. Thereafter Olsen obtained two more continuances via stipulations, which collectively continued his trial from May 5, 2020 to October 13, 2020.

On August 20, 2020, the district court held a status conference on Olsen's case. Olsen, for the first time, invoked his right to a speedy trial and expressed a

desire to proceed with a jury trial on October 13, 2020.  The government argued that an ends of justice continuance was appropriate due to the COVID-19 pandemic, the Central District's order suspending jury trials, and the absence of protocols to ensure the safety of jurors, witnesses, court staff, litigants, attorneys, defendants, and the public.  The government also highlighted that it had objected to Olsen's request for a continuance a year earlier and had sought to proceed with trial in November 2019. In addition, the government noted, Olsen was out of detention, therefore diminishing any possible prejudice resulting from delay.

On August 28, 2020, the government formally moved to continue the trial from October 13, 2020 to December 1, 2020.  The government argued that, given the Central District's suspension of jury trials and the lack of district-approved protocols to safely conduct a jury trial, the ends of justice served by a continuance outweighed the best interest of the public and Olsen in having a speedy trial.  Olsen opposed the motion, and the district court denied it on September 2, 2020.

In denying the government's motion, the district judge made clear that, in his view, nothing short of trial impossibility could permit additional delay of Olsen's trial: "Continuances under the 'ends of justice' exception in the Speedy Trial Act are appropriate if without a continuance, holding the trial would be *impossible*" and "*actual impossibility* is key for application of [the ends of justice] exception."  The court concluded that the Constitution "requires that a trial only be continued over a

defendant's objection if holding the trial is *impossible*" and that "[i]f it is possible for the court to conduct a jury trial, the court is constitutionally obligated to do so. There are no ifs or buts about it."  Because, the district court reasoned, "it is simply not a physical or logistical impossibility to conduct a jury trial," a continuance was forbidden.  The district court therefore requested the Chief Judge of the Central District to summon jurors for Olsen's trial.  The Chief Judge promptly rejected this request and explained that the majority of the Central District judges had approved a general order to suspend jury trials as "necessary to protect the health and safety of prospective jurors, defendants, attorneys, and court personnel due to the [COVID-19] pandemic."

**3.**

On September 15, 2020, Olsen moved to dismiss his indictment with prejudice for violations of the Speedy Trial Act and Sixth Amendment.  On October 14, 2020, the district court granted the motion.  The district court's dismissal order was premised, again, on the theory that the court could not grant a continuance unless "holding [Olsen's] trial would be *impossible*."  The district court stated:

> Given the constitutional importance of a jury trial to our democracy, a court cannot deny an accused his right to a jury trial *unless conducting one would be impossible*.  This is true whether the United States is suffering through a national disaster, a terrorist attack, civil unrest, or the coronavirus pandemic that the country and the world are currently facing.  Nowhere in the Constitution is there an exception for times of emergency or crisis.  There are no ifs or buts about it.

In other words, nothing short of "*actual impossibility*" would do. Although, the court reasoned, the pandemic is "serious" and "[o]f course" posed a "public health risk," "it is simply not a physical or logistical impossibility to conduct a jury trial."

The district court observed that grand juries had convened in the federal courthouse and that the Orange County Superior Court, which is across the street from the Santa Ana Courthouse, had resumed jury trials with precautionary measures. "Clearly," the district court reasoned, "conducting a jury trial during this coronavirus pandemic is possible" and the Central District had therefore "[s]adly" denied Olsen his speedy-trial rights by suspending jury trials because they were "*unsafe*," but not "*impossible*." The court noted that "it is not a question of *if* the Court should have held Mr. Olsen's criminal jury trial during this stage of the coronavirus pandemic, but a question of *how* the Court should have held it." The court did not separately address Olsen's Sixth Amendment claim, finding that the analysis of that claim would parallel the Speedy Trial Act analysis.

As for the remedy, the district court dismissed Olsen's indictment with prejudice, pointing to the Central District's suspension of trials and refusal to summon jurors for Olsen's trial. The district court focused on the circumstances leading to dismissal and stated that the Chief Judge decided to suspend jury trials "knowingly and willfully" based on "the risk that people might get sick from the coronavirus," but "with little or no regard" for Olsen's speedy-trial rights. The court

explained that "dismissing with prejudice is the only sanction with enough teeth to create any hope of deterring additional delay in the resumption of jury trials and avoiding further dismissals of indictments," that dismissal without prejudice would let the government reindict "and proceed as if no constitutional violation ever occurred," and that this "meaningless result" would have "no adverse consequences" for the Central District.

Because the seventy-day Speedy Trial Act clock had not yet fully run, and no Speedy Trial Act violation had yet occurred, the court announced that the dismissal would "not take effect until October 28, 2020," when the Speedy Trial Act clock would expire.[5]  On that date, the district court entered a short order dismissing the indictment with prejudice and exonerating Olsen's bond.

## III.

### A.

We are asked to provide guidance on the application of the Speedy Trial Act's ends of justice provision, 18 U.S.C. § 3161(h)(7)(A), in the context of the challenges presented by the COVID-19 pandemic.  Olsen urges us to adopt the district court's

---

[5] The parties do not dispute that the eight continuances in this case postponed Olsen's trial from September 5, 2017 to October 13, 2020.  The district court's orders excluded this time from the calculation of the date by which Olsen's trial was required to commence.  Based on these exclusions, the seventy-day Speedy Trial Act period ran from July 11, 2017 to September 4, 2017 (fifty-five days) and from October 13, 2020 to October 29, 2020 (fifteen days).

reading of § 3161(h)(7)(A)—that "[c]ontinuances under the 'ends of justice' exception in the Speedy Trial Act are appropriate if without a continuance, holding the trial would be *impossible*." We decline to do so. At best, this is a strained reading of the Speedy Trial Act, and one without support from the text of the statute or our precedent.

In concluding that literal impossibility is the relevant standard for an ends of justice continuance, the district court evaluated only part of the first ends of justice factor: "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding *impossible* . . . ." 18 U.S.C. § 3161(h)(7)(B)(i) (emphasis added). In support of this interpretation, Olsen points to two of our precedents evaluating the Speedy Trial Act's ends of justice provision. In *Furlow v. United States*, we noted that Mt. St. Helens had erupted two days before the defendant's trial, which "interrupted transportation, communication, etc. (affecting the abilities of jurors, witnesses, counsel, officials to attend the trial)." 644 F.2d at 767–68. Because of the logistical problems caused by the eruption, the district court continued the trial for two weeks past the prior Speedy Trial Act deadline under the ends of justice continuance provision. *Id.* Recognizing the "appreciable difficulty expected with an incident/accident of earth-shaking effect," we held that this "relatively brief" delay did not violate the Speedy Trial Act. *Id.* at 769.

Likewise, we found no Speedy Trial Act violation in *United States v. Paschall*, where the district court granted an eight-day ends of justice continuance of the Speedy Trial Act's charging deadline because the grand jury was unable to form a quorum due to a major snowstorm. 988 F.2d 972, 973–75 (9th Cir. 1993).[6] Specifically, we concluded that an ends of justice continuance was justified because the "interest of justice outweigh[ed] the public's and defendant's interest in a speedy trial" and "the inclement weather made the proceedings impossible." *Id.* at 975.

Contrary to Olsen's argument, nothing in *Furlow* or *Paschall* establishes a rule that an ends of justice continuance requires literal impossibility. In those cases, we simply affirmed ends of justice continuances because the eruption of a volcano and a major snowstorm temporarily impeded court operations. In other words, where it was temporarily impossible to conduct court proceedings for relatively brief periods, we found no Speedy Trial Act violation: but these cases do not stand for the proposition that a finding of impossibility is required in order to exclude time from the 70-day Speedy Trial Act clock. To be sure, the courts faced "appreciable difficulty" in proceeding to trial in *Furlow*, 644 F.2d at 769, and the inclement weather made grand jury proceedings temporarily "impossible" in *Paschall*, 988

---

[6] *Paschall* addressed the time between arrest or service of summons and an indictment, which cannot exceed thirty days. *See* 18 U.S.C. § 3161(b). Olsen's case addresses the time between indictment or arraignment and trial, which cannot exceed seventy days. *See id.* § 3161(c).

F.2d at 975.  But we never sanctioned the highly unusual result the district court reached here—that because the district court could physically hold a trial, it was required to deny the government's ends of justice continuance and dismiss Olsen's indictment with prejudice.[7]

A proper reading of 18 U.S.C. § 3161(h)(7)(B)(i) compels the opposite result. This provision directs the district court to consider "*[w]hether the failure to grant*" a continuance would make continuing the proceedings impossible.  18 U.S.C. § 3161(h)(7)(B)(i) (emphasis added).  Because not granting the government's continuance meant that the Speedy Trial Act clock would necessarily expire before Olsen could be brought to trial, it follows that the district court's "failure to grant" an ends of justice continuance in this case *did* make "a continuation of [Olsen's] proceeding impossible."  *Id.*  The district court instead considered only whether it was physically impossible to hold a trial.  Nothing in the Speedy Trial Act limits

---

[7] Olsen's reliance on out-of-circuit caselaw fares no better.  *See United States v. Hale*, 685 F.3d 522, 533–36 (5th Cir. 2012) (upholding an ends of justice continuance because a key witness was unavailable due to family emergency); *United States v. Richman*, 600 F.2d 286, 293–94 (1st Cir. 1979) (upholding an ends of justice continuance due to a blizzard); *United States v. Stallings*, 701 Fed. App'x. 164, 170–71 (3d Cir. 2017) (upholding an ends of justice continuance based in part on prosecutor's family emergency and scheduling conflicts); *United States v. Scott*, 245 Fed. App'x. 391, 393–94 (5th Cir. 2007) (upholding an ends of justice continuance based in part on Hurricane Katrina); *United States v. Correa*, 182 F. Supp. 2d 326, 327–29 (S.D.N.Y. 2001) (upholding an ends of justice continuance due to the September 11, 2001 terrorist attacks).  There is nothing in any of these cases to support the unwarranted reading of trial impossibility into the ends of justice provision that the district court adopted and Olsen advocates here.

district courts to granting ends of justice continuances only when holding jury trials is impossible. *See id.* This is an unnecessarily inflexible interpretation of a provision meant to provide necessary flexibility to district courts to manage their criminal cases. *See Bloate v. United States*, 559 U.S. 196, 214 (2010) (citing *Zedner*, 547 U.S. at 498); *see also* S. Rep. No. 93–1021, 93d Cong., 2d Sess. 39 (1974) (noting that the ends of justice provision is "the heart of the speedy trial scheme" and provides for "necessary flexibility.").

In sum, the district court committed clear error by reading the word "impossible" from 18 U.S.C. § 3161(h)(7)(B)(i) in isolation. This is enough for us to reverse. *See Murillo*, 288 F.3d at 1133.[8]

## B.

By solely focusing on the word "impossible" in 18 U.S.C. § 3161(h)(7)(B)(i), the district court also overlooked the rest of the provision, which requires courts to ask whether the district court's failure to apply an ends of justice continuance "would . . . result in a miscarriage of justice." We find the miscarriage-of-justice provision particularly salient in Olsen's case.

Olsen was indicted in July 2017 on thirty-four counts related to his prescribing dangerous combinations and unnecessary amounts of highly regulated pain

---

[8] Because the basis for the district court's dismissal order was statutory only, we need not separately address Olsen's Sixth Amendment claim.

medications, and was granted pretrial bond.  He then obtained eight trial continuances, including one over the government's objection, effectively delaying his trial for well over three years.  After the Central District suspended jury trials, Olsen insisted on sticking to his scheduled trial date.  By that time, the prosecution had been ready for trial for months and was wholly blameless for the Central District's suspension of jury trials.

The district court's failure to even mention these important facts in its dismissal order—especially the years of continuances while Olsen was on pre-trial release and the absence of any government culpability or minimal prejudice to Olsen—is troubling.  Olsen's argument, that the district court's finding that a trial was not impossible "implicitly" includes a finding that there would be no miscarriage of justice, is simply not convincing.  We find no difficulty in concluding that the district court's failure to grant the government's motion and subsequent dismissal of Olsen's indictment, under the unique facts of Olsen's case and the Central District's suspension of jury trials, resulted in a miscarriage of justice.  18 U.S.C. § 3161(h)(7)(B)(i).

## C.

What is more, the district court failed to consider other, non-statutory factors. Section 3161(h)(7)(B) instructs district courts to consider a list of enumerated factors, "among others," in deciding whether to grant an ends of justice continuance.

16

Although district courts have broad discretion to consider any factors based upon the specific facts of each case, we have reversed rulings where district courts have entirely failed to address relevant non-statutory considerations. *See, e.g.*, *United States v. Lloyd*, 125 F.3d 1263, 1269 (9th Cir. 1997) (finding the district court should have considered whether the parties "actually want[ed] and need[ed] a continuance, how long a delay [was] actually required, [and] what adjustments [could have been] made with respect to the trial calendars [to avoid a continuance]").

The Speedy Trial Act and our case law are silent as to what non-statutory factors district courts should generally consider. Nevertheless, in the context of the COVID-19 pandemic, we find relevant the following non-exhaustive factors: (1) whether a defendant is detained pending trial; (2) how long a defendant has been detained; (3) whether a defendant has invoked speedy trial rights since the case's inception; (4) whether a defendant, if detained, belongs to a population that is particularly susceptible to complications if infected with the virus; (5) the seriousness of the charges a defendant faces, and in particular whether the defendant is accused of violent crimes; (6) whether there is a reason to suspect recidivism if the charges against the defendant are dismissed; and (7) whether the district court has the ability to safely conduct a trial.[9]

---

[9] The district court's order questioned why the Central District of California conditioned its ability to hold jury trials on orders issued by the state government. *See Blueprint for a Safer Economy*, available at

This non-exhaustive list, in the context of the pandemic, facilitates the proper balancing of whether the ends of justice served by granting a continuance outweigh the best interest of the public and the defendant in convening a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(A); *see also United States v. Engstrom*, 7 F.3d 1423, 1426 (9th Cir. 1993) (noting that that the ends of justice provision promotes "an express balancing of the benefit to the public and defendant from a continuance with the costs imposed" of such a continuance). The record does not show that the district court considered any of these relevant factors. *See* 18 U.S.C. § 3161(h)(7)(A).

Finally, we note that Olsen's reliance on *United States v. Clymer*, 25 F.3d 824, 829 (9th Cir. 1994), is not helpful. It is true "that the ends of justice exclusion . . . was intended by Congress to be rarely used, and that the provision is not a general exclusion for every delay." *Clymer*, 25 F.3d at 828 (internal quotation marks and citations omitted); *see also* S. Rep. No. 93-1021, at 39, 41 (1974) (reflecting Congress's intent that ends of justice continuances "be given only in unusual cases" and "be rarely used"). But surely a global pandemic that has claimed

---

https://covid19.ca.gov/safer-economy/. Specifically, the district court observed that under California's *Blueprint*, certain essential sectors such as healthcare, emergency services, food, and energy were permitted to continue operations. This overlooks that the *Blueprint*'s color-coded tiers are premised on several factors that influence the risk of viral transmission, including ventilation in particular facilities, whether occupants of a facility can socially distance, and the duration of the gathering. The record in this case does not allow comparison between the federal district court in Santa Ana and nearby state courthouses based on the *Blueprint*'s risk factors.

more than half a million lives in this country, and nearly 60,000 in California alone, falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health.[10]  In approving the Central District's declaration of judicial emergency, this Court's Judicial Council explained that "Congress did not intend that a district court demonstrate its inability to comply with the [Speedy Trial Act] by dismissing criminal cases and releasing would-be convicted criminals into society." *See Judicial Emergency*, 955 F.3d at 1142–43.  That is precisely what the district court did here.

## IV.

While it is not necessary to our disposition of this case, we also find it important to briefly highlight the district court's additional error in dismissing Olsen's indictment *with* prejudice.  Although the district court recognized the charges against Olsen as "extremely serious," it nevertheless dismissed the

---

[10] Olsen repeatedly points to state courts in the Central District of California for his position that it is not impossible to conduct a jury trial safely.  But just because state courts are holding jury trials does not mean that they are necessarily holding them safely.  It is unknown whether jurors, witnesses, court staff, litigants, attorneys, and defendants are being subject to serious risks and illness.  Nothing in the record indicates that the Central District was able to hold a jury trial safely in October 2020, when Olsen's case was set for trial.  Indeed, at argument, Olsen's counsel could not point to anything in the district court's dismissal order or the record, aside from noting that the court would have utilized unidentified "similar safety precautions" to those state courts did, to adequately address these safety concerns.  The district court in fact acknowledged that even though it was possible to hold trials, there were significant health risks in doing so.

indictment with prejudice, concluding that it was the only sanction that would have "enough teeth to create any hope of deterring additional delay in the resumption of jury trials."

We review the district court's decision to dismiss with or without prejudice for abuse of discretion. *United States v. Taylor*, 487 U.S. 326, 332 (1988). A court abuses its discretion if it "failed to consider all the factors relevant to the choice" and the "factors it did rely on were unsupported by factual findings or evidence in the record." *Id.* at 344. "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: [(1)] the seriousness of the offense; [(2)] the facts and circumstances of the case which led to the dismissal; and [(3)] the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2). A court's decision whether to dismiss the charges with or without prejudice depends on a "careful application" of these factors to each particular case. *Clymer*, 25 F.3d at 831.

Here, the district court failed to adequately consider all the relevant factors as applied to Olsen's case. *See Taylor*, 487 U.S. at 344. The district court primarily based its decision on the perceived need to deter the Central District from continuing its jury trial suspension. Olsen contends that the district court based its dismissal with prejudice on the factors of only "*this particular case*." The record shows

otherwise.  It appears that the only case-specific factor the court considered was the seriousness of Olsen's crimes, which it properly weighed against a dismissal with prejudice.  *See United States v. Medina*, 524 F.3d 974, 986–87 (9th Cir. 2008) (explaining that serious crimes weigh in favor of dismissal without prejudice).  The remainder of the district judge's three-page analysis focuses only on the Central District's suspension of criminal jury trials and his disagreement with his colleagues' decision to vote in favor of suspension.  Although the district judge characterized this analysis as the "facts and circumstances" that led to dismissal, the court entirely failed to consider the facts and circumstances of *Olsen's* case, including the years of continuances Olsen obtained while on pre-trial release and the absence of any prosecutorial culpability in causing the delay.  *See United States v. Pena-Carrillo*, 46 F.3d 879, 882 (9th Cir. 1995) (looking for evidence of purposeful wrongdoing on part of prosecutor for this factor); *accord United States v. Stevenson*, 832 F.3d 412, 420 (3d Cir. 2016) (explaining that this factor considers whether the delay stemmed from "'intentional dilatory conduct' or a 'pattern of neglect on the part of the Government'") (quoting *United States v. Cano-Silva*, 402 F.3d 1031, 1036 (10th Cir. 2005)).  The district court therefore committed legal error in failing to consider key factors relevant to Olsen's case: the absence of prosecutorial culpability and the multiple continuances requested by Olsen.  *See Taylor*, 487 U.S. at 344.

The district court also committed legal error in evaluating the impact of reprosecution on the administration of the Speedy Trial Act and on the administration of justice. *See* 18 U.S.C. § 3162(a)(2). In dismissing Olsen's indictment with prejudice, the district court presumed that any adequate remedy must bar reprosecution. The district judge characterized dismissal with prejudice as "the only sanction with enough teeth to create any hope of deterring additional delay in the resumption of jury trials." The court explained that dismissal without prejudice would let the government reindict "and proceed as if no constitutional violation ever occurred" and concluded that this would be a "meaningless result." This reasoning was incorrect. The Supreme Court has made clear that "[d]ismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds." *Taylor*, 487 U.S. at 342; *see also United States v. Newman*, 6 F.3d 623, 627 (9th Cir. 1993) (rejecting argument "that dismissal without prejudice renders the Speedy Trial Act meaningless"). Because the district court's ruling was based on an erroneous view of the law, it abused its discretion in dismissing with prejudice. *See United States v. Arpaio*, 951 F.3d 1001, 1005 (9th Cir. 2020).

**V.**

We reverse the district court's dismissal of Olsen's indictment.  The district court's interpretation of the Speedy Trial Act's ends of justice provision—that continuances are appropriate only if holding a criminal jury trial would be impossible—was incorrect.  Nothing in the plain text of the Speedy Trial Act or our precedents supports this rigid interpretation.

We are, however, mindful that the right to a speedy and public jury trial provided by the Sixth Amendment is among the most important protections guaranteed by our Constitution, and it is not one that may be cast aside in times of uncertainty.  *See Furlow*, 644 F.2d at 769 ("Except for the right of a fair trial before an impartial jury no mandate of our jurisprudence is more important"); *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) ("[E]ven in a pandemic, the Constitution cannot be put away and forgotten.").

The Central District of California did not cast aside the Sixth Amendment when it entered its emergency orders suspending jury trials based on unprecedented public health and safety concerns.  To the contrary, the orders make clear that the decision to pause jury trials and exclude time under the Speedy Trial Act was not made lightly.  The orders acknowledge the importance of the right to a speedy and public trial both to criminal defendants and the broader public, and conclude that, considering the continued public health and safety issues posed by COVID-19, proceeding with such trials would risk the health and safety of those involved,

including prospective jurors, defendants, attorneys, and court personnel.   The pandemic is an extraordinary circumstance and reasonable minds may differ in how best to respond to it.   The District Court here, however, simply misread the Speedy Trial Act's ends of justice provision in dismissing Olsen's indictment with prejudice.

**The judgment of the district court is REVERSED and REMANDED with instructions to reinstate Olsen's indictment, grant an appropriate ends of justice continuance, and set this case for a trial.**