STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SAMUEL J. DIAZ (Cal. Bar No. 304503)
Assistant United States Attorney
International Narcotics, Money Laundering,
& Racketeering Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3045
    Facsimile: (213) 894-6269
    E-mail:   samuel.diaz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 17-76-CJC |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S RENEWED MOTION TO DISMISS ON SPEEDY TRIAL GROUNDS |
| v. | |
| JEFFREY OLSEN, | Hearing Date: 9:00 a.m. |
| Defendant. | Hearing Time: August 22, 2022 |
| | Location:   Courtroom of the Hon. Cormac J. Carney |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Samuel J. Diaz, hereby files its Opposition to defendant's renewed motion to dismiss on Speedy Trial grounds.

//

//

//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 26, 2022                    Respectfully submitted,

                                        STEPHANIE S. CHRISTENSEN
                                        Acting United States Attorney

                                        SCOTT M. GARRINGER
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                        _____/s/_____
                                        SAMUEL J. DIAZ
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                 PAGE

TABLE OF AUTHORITIES.............................................iii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION.................................................1

II.   STATEMENT OF FACTS..........................................2

      A.    Defendant was Indicted for Illegally Selling
            Prescription Drugs to Patients and for Lying to the
            DEA...................................................2

      B.    Defendant Requested and Obtained Eight Continuances.......2

      C.    The Court Denied the Government's Ex Parte Request for
            a Continuance and Dismissed the Indictment with
            Prejudice.............................................3

      D.    The Ninth Circuit Reversed the Court's Judgment and
            Ordered It to Reinstate the Indictment, Grant an
            Appropriate Ends-of-Justice Continuance and Set the
            Case for Trial........................................3

III.  ARGUMENT....................................................4

      A.    The Law of the Case and the Rule of Mandate Doctrines
            Preclude the Court from Revisiting the Ninth Circuit's
            Holdings..............................................4

            1.    The Law of the Case Doctrine Bars Relitigating
                  the Ninth Circuit's Holdings........................4

                  a.    The Ninth Circuit Held that the Court Erred
                        in Denying the Government's Request for an
                        Ends-of-Justice Continuance....................5

                  b.    The Ninth Circuit Held that the Court Abused
                        Its Discretion in Dismissing the Indictment
                        with Prejudice.............................8

            2.    The Rule of Mandate Doctrine Requires the Court
                  to Execute the Mandate..............................9

      B.    The Olsen Factors Weigh Heavily In Favor of an Ends-
            of-Justice Continuance...............................11

            1.    Defendant Was Not Detained during Trial and Did
                  Not Spend a Single Night in Custody................12

            2.    Defendant Did Not Invoke his Speedy Trial Rights

i

Case 8:17-cr-00076-CJC   Document 136   Filed 07/26/22   Page 4 of 35   Page ID #:2281

**<u>TABLE OF CONTENTS (CONTINUED)</u>**

<u>DESCRIPTION</u>                                                                                    <u>PAGE</u>

since the Case's Inception..........................12

3.   The Severity of the Charges Weigh in Favor of a
     Continuance....................................13

4.   The Risk that Defendant will Reoffend if Charges
     are Dismissed Weighs in Favor of a Continuance......14

5.   The Court's Ability to Conduct a Safe Trial Is,
     At Best, the Sole *Olsen* Factor that Weighs
     Against a Continuance..............................14

C.   Any Dismissal Should be Without Prejudice...............15

1.   The Seriousness of Defendant's Crimes Weigh
     Against Dismissal with Prejudice...................16

2.   Defendant's Three-Year Delay and Absence of
     Prosecutorial Culpability Weigh Against Dismissal
     with Prejudice....................................16

3.   Impact of Reprosecution on the Administration of
     Justice Weighs in Favor of a Dismissal Without
     Prejudice.........................................18

D.   Defendant's Sixth Amendment Right to a Speedy Trial
     was Not Violated......................................19

1.   Legal Standard....................................20

2.   Length of Delay...................................20

3.   Reason for the Delay..............................22

4.   Defendant's Assertion of His Right.................23

5.   Prejudice to Defendant............................24

6.   The Central District's Jury Trial Suspension Did
     Not Violate the Sixth Amendment....................26

IV.  CONCLUSION................................................28

ii

1

**TABLE OF AUTHORITIES**

2

<u>DESCRIPTION</u>                                                                                      <u>PAGE</u>

3

Cases

4

<u>Barker v. Wingo,</u>
   407 U.S. 514 (1972) ................................. 20, 21, 22, 24
5

6

<u>Doyle v. Law,</u>
   464 F. App'x 601 (9th Cir. 2011) .............................. 20
7

<u>Hall v. City of Los Angeles,</u>
   697 F.3d 1059 (9th Cir. 2012) ............................... 6, 9
8

9

<u>In re Sanford Fork & Tool Co.,</u>
   160 U.S. 247 (1895) .......................................... 9
10

11

<u>United States v. Lam,</u>
   251 F.3d (9th Cir. 2001) ..................................... 24
12

<u>McNeely v. Blanas,</u>
   336 F.3d 822 (9th Cir. 2003) ................................. 22
13

14

<u>Mirchandani v. United States,</u>
   836 F.2d 1223 (9th Cir. 1988) .............................. 4, 5, 6
15

16

<u>Roman Catholic Diocese of Brooklyn v. Cuomo,</u>
   141 S. Ct. 63 (2020) ..................................... 27, 28
17

18

<u>Taylor v. Lewis,</u>
   460 F.3d 1093 (9th Cir. 2006) ................................ 13
19

<u>Twentieth Century Fox Film Corp. v. Ent. Distrib.,</u>
   429 F.3d 869 (9th Cir. 2005) ................................. 10
20

21

<u>United States v. Allen,</u>
   34 F.4th 789 (9th Cir. 2022) ................................. 27
22

23

<u>United States v. Baker,</u>
   63 F.3d 1478 (9th Cir. 1995) ................................. 21
24

<u>United States v. Beamon,</u>
   992 F.2d 1009 (9th Cir. 1993) ................................ 25
25

26

<u>United States v. Bert,</u>
   814 F.3d 70 (2d Cir. 2016) ................................. 17, 18
27

28

<u>United States v. Cote,</u>
   51 F.3d 178 (9th Cir. 1995) ................................... 9

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

United States v. Ewell,
   383 U.S. 116 (1966) ............................................ 12

United States v. Garcia-Beltran,
   443 F.3d 1126 (9th Cir. 2006) .................................. 9

United States v. Gregory,
   322 F.3d 1157 (9th Cir. 2003) .............................. 20, 25

United States v. Kellington,
   217 F.3d 1084 (9th Cir. 2000) .................................. 9

United States v. King,
   483 F.3d 969 (9th Cir. 2007) .......................... 21, 22, 23

United States v. Krug,
   666 F. App'x 665 (9th Cir. 2016) .............................. 25

United States v. Loud Hawk,
   474 U.S. 302 (1986) ........................................... 24

United States v. Martinez-Alcala,
   578 F. App'x 650 (9th Cir. 2014) .............................. 25

United States v. Medina,
   524 F.3d 974 (9th Cir. 2008) .............................. 13, 15

United States v. Nance,
   666 F.2d 353 (9th Cir. 1982) .................................. 21

United States v. Olsen,
   21 F.4th 1036 (9th Cir. 2022) ............................. passim

United States v. Pimentel,
   34 F.3d 799 (9th Cir. 1994) ................................... 10

United States v. Sears, Roebuck & Co.,
   877 F.2d 734 (9th Cir. 1989) .................................. 20

United States v. Shetty,
   130 F.3d 1324 (9th Cir. 1997) ................................. 23

United States v. Simmons,
   536 F.2d 827 (9th Cir. 1976) .................................. 26

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                 PAGE

United States v. Taylor,
  487 U.S. 326 (1988) ..................................... 8, 16, 19

United States v. Turner,
  926 F.2d 883 (9th Cir. 1991) ................................ 24

Zedner v. United States,
  547 U.S. 489 (2006) ......................................... 13

**Rules**

18 U.S.C. § 3162(a)(2) .................................... 8, 15

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

On appeal, the Ninth Circuit held that this Court erred in

4 denying the government's request for an ends-of-justice continuance

5 of the trial date from October 13, 2020 to December 1, 2020, and that

6 the Court abused its discretion in dismissing the Indictment with

7 prejudice.  It therefore reversed this Court's judgment and remanded

8 the case "with instructions to reinstate Olsen's indictment, grant an

9 ends of justice continuance, and set this case for a trial." <u>United</u>

10 <u>States v. Olsen</u>, 21 F.4th 1036, 1049 (9th Cir. 2022).  The Court

11 should do just that.

12

In his renewed motion to dismiss, defendant urges the Court to

13 once again evaluate whether to grant the government's <u>ex parte</u>

14 application for a continuance.  This would constitute error.  The

15 remand limits the Court to strictly effectuating the Ninth Circuit's

16 mandate.  That mandate orders the Court to grant an appropriate

17 continuance and set this case for trial, not to evaluate defendant's

18 motion anew nor to conduct an evidentiary hearing as to the

19 circumstances that existed in October 2020.  Similarly, the law of

20 the case doctrine precludes the Court from revisiting any of the

21 Ninth Circuit's holdings.

22

But even if this Court were permitted to reevaluate the issues

23 that the Ninth Circuit foreclosed, the factors the Circuit enumerated

24 weigh heavily in favor of an ends-of-justice continuance and

25 certainly do not support dismissal of the Indictment with prejudice.

26 Nor should this Court sanction further delay to conduct an

27 evidentiary hearing on irrelevant issues--if defendant genuinely

28

wants a trial, he should have it.  His renewed motion to dismiss should be denied and a trial date set.

## II.  STATEMENT OF FACTS

### A.  Defendant was Indicted for Illegally Selling Prescription Drugs to Patients and for Lying to the DEA

From 2013 to 2016, defendant, then a California-licensed physician, knowingly and intentionally distributed oxycodone, amphetamine salts, alprazolam, and hydrocodone to numerous patients outside the regular course of professional practice and without any legitimate medical purposes.  (Dkt. 1.)  On July 7, 2017, defendant was indicted on 34 counts of distribution of controlled substances and one count of making a false statement in a Drug Enforcement Administration ("DEA") application.  (Id.)  Four days later, defendant appeared for his arraignment and was released on bond the same day.  (Dkt. 10.)  At defendant's arraignment, the Court set a trial date of September 5, 2017.  (Id.)

### B.  Defendant Requested and Obtained Eight Continuances

Defendant requested, and obtained, eight continuances that collectively continued the trial for over three years.  The first continuance continued the trial from September 5, 2017 to January 30, 2018.  (Dkt. 19.)  The second continuance continued the trial from January 30, 2018 to August 14, 2018.  (Dkt. 21).  The third continuance continued the trial from August 14, 2018 to December 4, 2018.  (Dkt. 23.)  The fourth continuance continued the trial from December 4, 2018 to June 18, 2019.  (Dkt. 26.)  The fifth continuance continued the trial from June 18, 2019 to November 5, 2019.  (Dkt. 35.)  The sixth continuance, which the government opposed, continued the trial from November 5, 2019 to May 5, 2020.  (Dkt. 42.)  The

1  seventh continuance continued the trial from May 5, 2020 to July 21,

2  2020.  (Dkt. 44.)  Lastly, the eighth continuance continued the trial

3  from July 21, 2020 to October 13, 2020.  (Dkt. 46.)

4    **C. The Court Denied the Government's <u>Ex Parte</u> Request for a**

5      **Continuance and Dismissed the Indictment with Prejudice**

6    On August 28, 2020, after defendant refused to continue the

7  trial, the government filed an <u>ex parte</u> application to continue the

8  trial from October 13, 2020 to December 1, 2020.  (Dkt. 54.)  At the

9  time, all jury trials in the Central District of California ("C.D.

10 Cal.") were indefinitely suspended under C.D. Cal. General Order No.

11 20-09 ("Order 20-09").  On September 2, 2020, the Court denied the

12 government's <u>ex parte</u> application and requested that jurors be

13 summoned for the October 13, 2020 trial date.  (Dkt. 67.)  The next

14 day, the Chief Judge of the Central District of California denied the

15 Court's request pursuant to Order 20-09.  (Dkt. 68.)

16   On October 14, 2020, the Court dismissed the Indictment with

17 prejudice, with its order taking effect on October 28, 2020, the day

18 after the expiration of the Speedy Trial clock.  (Dkt. Nos. 98, 105.)

19 The government timely appealed.

20   **D. The Ninth Circuit Reversed the Court's Judgment and Ordered**

21     **It to Reinstate the Indictment, Grant an Appropriate Ends-**
    **of-Justice Continuance and Set the Case for Trial**

22   The Ninth Circuit reversed the Court's judgment and remanded the

23 case "with instructions to reinstate Olsen's indictment, grant an

24 appropriate ends of justice continuance, and set this case for

25 trial."  (Dkt. 114.)  In doing so, it held that the Court's denial of

26 the government's <u>ex parte</u> application for a continuance was erroneous

27 and that the Court abused its discretion in dismissing the Indictment

28

1  with prejudice.  <u>United States v. Olsen</u>, 21 F.4th 1036 (9th Cir.
2  2022).  On May 16, 2022, the Ninth Circuit's mandate issued.

3  **III.  ARGUMENT**

4      **A.   The Law of the Case and the Rule of Mandate Doctrines
5          Preclude the Court from Revisiting the Ninth Circuit's
        Holdings**

6      This case is before the Court on remand from the Ninth Circuit's
7  order reversing the Court's judgment and directing the Court to
8  reinstate the Indictment, grant an appropriate ends-of-justice
9  continuance, and set the case for trial.  Under the law of the case
10 doctrine, the Court is barred from revisiting any issue resolved by
11 the Ninth Circuit, including its rulings that the Court erred in
12 denying the government's ends-of-justice continuance, and abused its
13 discretion in dismissing the Indictment with prejudice.  Under the
14 rule of mandate doctrine, the Court must enforce, not reexamine, the
15 Ninth Circuit's mandate.  Accordingly, the Court should reject
16 defendant's attempt to relitigate the government's <u>ex parte</u> request
17 for a continuance and set this case for trial.

18         1.   <u>The Law of the Case Doctrine Bars Relitigating the
19            Ninth Circuit's Holdings</u>

20     Under the law of the case doctrine, "district courts are not
21 free to decide issues on remand that were previously decided either
22 expressly or by implication on appeal."  <u>Mirchandani v. United
23 States</u>, 836 F.2d 1223, 1225 (9th Cir. 1988).  This rule is limited to
24 issues "previously determined by the appellate court."  The rule is
25 "necessary to the operation of a hierarchical judicial system."  <u>Id.</u>
26 Here, the Ninth Circuit ruled that the Court erred in denying the
27 government an ends-of-justice continuance and abused its discretion

28

4

by dismissing the Indictment with prejudice.  Under the law of the case doctrine, these issues are settled.

> ### a. The Ninth Circuit Held that the Court Erred in Denying the Government's Request for an Ends-of-Justice Continuance

On appeal, the Ninth Circuit held that this Court's denial of the government's ex parte application for an ends-of-justice continuance was erroneous.  Olsen, 21 F.4th at 1045.  First, it held that the Court "committed clear error" in misinterpreting the word "impossible" under 18 U.S.C. § 3161(h)(7)(B)(i) and that this error alone was "enough for us to reverse."  Id.  "Nothing in the Speedy Trial Act limits district courts to granting ends of justice continuances only when holding jury trials is impossible."  Id.  The Circuit explained that the proper inquiry under § 3161(h)(7)(B)(i) was not whether "it was physically impossible to hold a trial," but "'whether the failure to grant' a continuance would make continuing the proceedings impossible."  Id. (emphasis in original) (brackets omitted).

Because, absent a continuance, "the Speedy Trial Act clock would necessarily expire before Olsen could be brought to trial," the Ninth Circuit held that the Court's "'failure to grant' an ends of justice continuance in this case did make a continuation of Olsen's proceeding impossible."  Id. (emphasis in original) (brackets omitted).

Hence, the Ninth Circuit went further than simply holding that the Court misinterpreted the meaning of "impossible" under § 3161(h)(7)(B)(i); it applied this provision to defendant's case and expressly held that the Court's failure to grant an ends-of-justice continuance, in light of the Central District's suspension of jury

1    trials, made continuing with defendant's proceedings impossible.  Cf.

2    Hall v. City of Los Angeles, 697 F.3d 1059, 1067 (9th Cir. 2012)

3    (holding that the law of the case doctrine did not bar the district

4    court from analyzing the plaintiff's claim as "[t]he applicability of

5    Devereaux prong (2) to Hall's coercive interrogation claim had never

6    been considered or decided by any court.").  Unlike in Hall, the

7    Ninth Circuit expressly ruled that the Court erred in rejecting an

8    ends-of-justice continuance under the "impossible" prong of

9    § 3161(h)(7)(B).  As such, this Court is "not free" on remand to

10    revisit this issue.  Mirchandani, 836 F.2d at 1225.

11         Second, the Ninth Circuit held that the Court's "failure to

12    grant the government's motion and subsequent dismissal of Olsen's

13    indictment, under the unique facts of Olsen's case and the Central

14    District's suspension of jury trials, resulted in a miscarriage of

15    justice."  Olsen, 21 F.4th at 1046.  It did not merely "suggest[] how

16    this Court might consider" this factor as defendant contends.  (Mot.

17    at 25).  Rather, it plainly held that the Court's failure to grant a

18    continuance resulted in a miscarriage of justice.  It explained that

19    the "miscarriage of justice" prong under § 3161(h)(7)(B)(i) was

20    "particularly salient in Olsen's case" based on defendant facing 34

21    counts of prescribing "dangerous combinations" of pain medications to

22    patients, the fact that defendant was released on bond, and that he

23    himself delayed the trial for over three years.  Id.  The Ninth

24    Circuit also noted that defendant only insisted on his Speedy Trial

25    rights after the Central District suspended jury trials, and that the

26    government was "wholly blameless" for the Central District's jury

27    trial suspension.  Id.  As the Ninth Circuit expressly held that the

28

1   Court's failure to grant a continuance resulted in a miscarriage of

2   justice, the Court may not revisit this holding on remand.

3       Third, the Ninth Circuit held that the Court failed to consider

4   relevant non-statutory factors in denying the government's request

5   for a continuance under § 3161(h)(7)(B) and set out several factors

6   for district courts to consider in the context of the COVID-19

7   pandemic (the "Olsen factors"), including: "(1) whether a defendant

8   is detained pending trial; (2) how long a defendant has been

9   detained; (3) whether a defendant has invoked speedy trial rights

10  since the case's inception; (4) whether a defendant, if detained,

11  belongs to a population that is particularly susceptible to

12  complications if infected with the virus; (5) the seriousness of the

13  charges a defendant faces, and in particular whether the defendant is

14  accused of violent crimes; (6) whether there is a reason to suspect

15  recidivism if the charges against the defendant are dismissed; and

16  (7) whether the district court has the ability to safely conduct a

17  trial." Id.

18      Although the Court did not explicitly address these factors in

19  in its opinion, it decided these factors by implication by holding

20  that the Court erred in denying an ends-of-justice continuance and

21  ordering the Court to grant an appropriate ends-of-justice

22  continuance and set the case for trial. The dissent from the denial

23  of rehearing en banc itself recognized that the Ninth Circuit applied

24  these factors by implication. See Olsen, 21 F.4th at 1077 (Collins,

25  J., dissenting from denial of reh'g en banc) ("the panel

26  conspicuously did not remand for the district court to apply these

27  factors; instead, it remanded with explicit instructions to 'grant'

28  an appropriate continuance and set a new trial date . . . The panel

7

thus must be understood to have applied these factors itself.").
Defendant recognized that too, pointing out that the opinion
"preempt[ed] any further speedy-trial proceedings on remand."  Def's
Petition for Rehearing, Olsen, Docket No. 48 at 21 (9th Cir. May 27,
2021).  Defendant urged the Circuit to revise its opinion to permit
further proceedings on remand, id. at 20-22, but the Circuit did not
do so.

> b.  *The Ninth Circuit Held that the Court Abused Its*
> *Discretion in Dismissing the Indictment with*
> *Prejudice*

The Ninth Circuit also held that this Court abused its
discretion in dismissing the Indictment with prejudice.  Id. at 1049.
Specifically, applying the 18 U.S.C. § 3162(a)(2) factors, the
Circuit held that, although this Court "properly weighed" the
seriousness of the offense against a dismissal with prejudice, the
Court failed to consider the facts and circumstances of defendant's
specific case, "including the years of continuances Olsen obtained
while on pre-trial release and the absence of any prosecutorial
culpability in causing the delay," and that the Court committed legal
error in construing a dismissal without prejudice as a toothless
remedy, in contravention of Supreme Court precedent.  Id. at 1048-49
(citing United States v. Taylor, 487 U.S. 326 (1988) (holding that a
"[d]ismissal without prejudice is not a toothless sanction")).  The
law of the case doctrine precludes the Court from revisiting the
Ninth Circuit's ruling that the Court abused its discretion in
dismissing the Indictment with prejudice.

1              **2.   The Rule of Mandate Doctrine Requires the Court to**
                    **Execute the Mandate**

2

3    "The rule of mandate is similar to, but broader than, the law of

4  the case doctrine." United States v. Garcia-Beltran, 443 F.3d 1126,

5  1130 (9th Cir. 2006) (quoting United States v. Cote, 51 F.3d 178, 181

6  (9th Cir. 1995)).  "[A] district court is limited by [the] remand

7  when the scope of the remand is clear." Hall, 697 F.3d at 1067.  The

8  district court "cannot vary it, or examine it for any other purpose

9  than execution; or give any other or further relief; or review it,

10  even for apparent error, upon any matter decided on appeal." United

11  States v. Kellington, 217 F.3d 1084, 1093 (9th Cir. 2000) (quoting In

12  re Sanford Fork & Tool Co., 160 U.S. 247, 255 (1895)); see also,

13  Garcia-Beltran, 443 F.3d at 1130 ("The rule of mandate requires a

14  lower court to act on the mandate of an appellate court, without

15  variance or examination, only execution.").  The rule of mandate is

16  jurisdictional. Hall, 697 F.3d at 1067.

17    The mandate provides as follows: "[t]he judgment of the district

18  court is REVERSED and REMANDED with instructions to reinstate Olsen's

19  indictment, grant an appropriate ends of justice continuance, and set

20  this case for a trial." (Dkt. 118.)  By its plain terms, it directs

21  the Court to (1) reinstate the Indictment; (2) grant an appropriate

22  ends-of-justice continuance; and (3) set the case for trial.  The

23  mandate does not permit the Court to assess whether to reinstate the

24  Indictment or whether to grant an appropriate continuance;[1] it orders

25

26      —————————

27     [1] Defendant misinterprets the plain meaning of the mandate.  The
mandate does not, as defendant alleges, remand for the Court to grant

28  "whatever ends-of-justice continuance it determines to be
appropriate," (Mot. at 28), it orders the Court to "grant an
appropriate ends of justice continuance." Olsen, 21 F.4th at 1049.

1    the Court to do so.  Accordingly, the rule of mandate prohibits the
2    Court from venturing beyond the limited scope of the mandate on
3    remand.  See, e.g., United States v. Pimentel, 34 F.3d 799, 800 (9th
4    Cir. 1994) (because "the scope of our remand was limited to the
5    single sentencing issue raised in [the defendant's] prior appeal, the
6    district court was without authority to reexamine any other
7    sentencing issues on remand."); see also, Twentieth Century Fox Film
8    Corp. v. Ent. Distrib., 429 F.3d 869, 883 (9th Cir. 2005) ("There is
9    nothing in our prior decision that indicates that we issued an open
10   remand.  Rather, in remanding to the district court, our opinion
11   contemplates a trial to resolve the only remaining genuine issue of
12   material fact.").

13        Nor did the mandate remand the case for the Court to apply the
14   newly announced Olsen factors in the first instance.  As the dissent
15   from the denial of rehearing en banc noted, "the panel conspicuously
16   did not remand for the district court to apply these factors;
17   instead, it remanded with explicit instructions to 'grant' an
18   appropriate continuance and set a new trial date[.]"  Olsen, 21 F.4th
19   at 1077 (Collins, J., dissenting from denial of reh'g en banc).
20   Accordingly, the Court would run afoul of the rule of mandate by
21   applying the Olsen factors on remand.[2]

22

23        [2] Defendant argues that because the government agreed to a
     limited remand for the Court to apply the Olsen factors in United
24   States v. Reyes, 19-740-CJC, that there is "no legitimate basis" to
     argue that the Olsen factors cannot be considered here.  (Mot. 42.)
25   The distinction is obvious.  The Ninth Circuit in Reyes explicitly
     remanded the case "for the limited purpose of permitting the court to
26   reconsider Reyes's motion to dismiss under the legal standard set for
     in United States v. Olsen, 21 F.4th 1036 (9th Cir. 2022) (per
27   curiam)."  Id. at Dkt. 93.  In contrast here, the Ninth Circuit
     remanded with instructions to "reinstate Olsen's indictment, grant an
28   ends of justice continuance, and set this case for a trial."  Olsen,
     21 F.4th at 1049.

1    Defendant's contention that the mandate permits the Court to
2 hold an evidentiary hearing stands on even shakier ground.  Defendant
3 requests a wide ranging and open-ended evidentiary hearing into the
4 operations of the Orange County Superior Court, the Southern District
5 of California's resumption of jury trials, the Central District's
6 jury trial ban, the Executive Committee's decision-making process,
7 and the Central District's safety protocols.  (Mot. at 89-95.)  The
8 mandate does not authorize the Court to conduct an evidentiary
9 hearing, much less the expansive evidentiary hearing defendant seeks.
10 To the contrary, it simply directs the Court to reinstate the
11 Indictment, grant an appropriate ends-of-justice continuance, and set
12 the case for trial.

13    The mandate's clarity is not unwound by the concurrence in the
14 denial of rehearing en banc.  Defendant fails to cite any support for
15 his contention that a concurrence in the denial of rehearing en banc
16 can alter or expand the mandate's clear meaning.  Defendant also
17 ignores the fact that the Olsen panel had the opportunity to amend
18 the opinion to provide that, on remand, the Court was to apply the
19 Olsen factors in the first instance and/or decide whether to grant an
20 ends-of-justice continuance.  It did not do so.  Instead, as
21 defendant acknowledges, the amended opinion is "the same as the
22 original except for a minor change in footnote 2."  (Mot. 24 n.134.)
23 Accordingly, the mandate's plain meaning controls.

24 **B.   The Olsen Factors Weigh Heavily In Favor of an Ends-of-Justice Continuance**
25

26    Although the law of the case doctrine precludes the Court from
27 applying the Olsen factors on remand, these factors weigh heavily in
28 favor of an ends-of-justice continuance.

1.   <u>Defendant Was Not Detained during Trial and Did Not</u>
     <u>Spend a Single Night in Custody</u>

The first, second, and fourth <u>Olsen</u> factors weigh in favor of an ends-of-justice continuance because defendant was not detained during trial and spent no time in custody.  Defendant was released on bond during the over three-year period that he continued the trial. <u>Olsen</u>, 21 F.4th at 1046.  In fact, on July 11, 2017, defendant was arraigned and released on bond without ever serving a single night in custody.

Defendant's argument that his Speedy Trial right is the same as that of an incarcerated defendant (Mot. at 95) is wrong.  "[T]he Sixth Amendment's primary guarantee is against 'undue and oppressive incarceration prior to trial.'"  <u>Id.</u> at 1058 (Bumatay, J.) (concurring in denial of reh'g <u>en banc</u>) (quoting <u>United States v.</u> <u>Ewell</u>, 383 U.S. 116, 120 (1966)).  While a defendant on pretrial release faces limitations on his freedom, he stands outside of the Sixth Amendment's core protection against prolonged pretrial incarceration.

Moreover, since the defendant was not detained, the fourth factor, which involves analyzing defendant's susceptibility to COVID-19 does not weigh against a continuance.

2.   <u>Defendant Did Not Invoke his Speedy Trial Rights since</u>
     <u>the Case's Inception</u>

The third factor involves "whether a defendant has invoked speedy trial rights since the case's inception[.]"  <u>Id</u>. at 1046. Defendant sought and obtained eight continuances from the case's inception on July 6, 2017, which collectively continued the trial for over three years.  He first invoked his right to a speedy trial

1  during a hearing on August 20, 2020.  Accordingly, he "did not

2  invoke[] his speedy trial rights since the case's inception."  Id.

3  at 21 F.4th at 1052 (Christen, Murgia JJ.) (concurring in denial of

4  reh'g en banc).

5      Defendant argues that this factor really asks whether defendant

6  "invoked his speedy-trial rights in a reasonable manner."  (Mot. at

7  96).  Defendant attempts to rewrite this factor because it plainly

8  weighs in favor of a continuance.  Defendant did not invoke his

9  speedy trial rights since the case's inception, rather he requested

10 to continue the trial eight times, which resulted in delay of over

11 three years.  Defendant's requests for continuances, moreover, did

12 not constitute the type of blanket waiver prohibited under Zedner v.

13 United States, 547 U.S. 489 (2006).  Rather, each of defendant's

14 eight continuances contained factual findings that justified each

15 respective ends-of-justice continuance.

16          3.   The Severity of the Charges Weigh in Favor of a
                 Continuance
17

18      Under the fifth factor, courts are to assess "the seriousness of

19 the charges a defendant faces," including whether they involve

20 violent crimes.  Olsen, 21 F.4th at 1046.  While not a violent

21 offense, the charges against defendant are extremely serious.

22 Defendant is indicted on "thirty-four counts related to his

23 prescribing dangerous combinations and unnecessary amounts of highly

24 regulated pain medications[.]"  Id.  The Ninth Circuit has repeatedly

25 held that drug distribution is a serious crime.  See United States v.

26 Medina, 524 F.3d 974, 987 (9th Cir. 2008) (affirming district court's

27 dismissal without prejudice based on the seriousness of the

28 conspiracy and drug-distribution charges); Taylor v. Lewis, 460 F.3d

                                    13

1093, 1099 (9th Cir. 2006) (possession of cocaine offense serious).
As this Court explained, "[t]here is no doubt that the crimes of
which Mr. Olsen is accused . . . are extremely serious." (Dkt. 98 at
17.)

Defendant's attempt to waive this factor away by invoking the
presumption of innocence and arguing that the charges are mere
allegations at this stage is of no import to this analysis. (Mot. at
97-98.) All charges are necessarily allegations at the Speedy Trial
motion stage. Because the charges against defendant are serious,
this factor weighs in favor of a continuance.

### 4. The Risk that Defendant will Reoffend if Charges are Dismissed Weighs in Favor of a Continuance

The sixth factor involves analyzing "whether there is a reason
to suspect recidivism if the charges against the defendant are
dismissed." Olsen, 21 F.4th at 1046. Defendant, who distributed
dangerous combinations of controlled substances to customers over
several years, presents a plain risk of re-engaging in similar
conduct if the charges are dismissed, especially if he is able to
regain his ability to prescribe controlled substances.

### 5. The Court's Ability to Conduct a Safe Trial Is, At Best, the Sole Olsen Factor that Weighs Against a Continuance

Defendant spends 47 pages of his 129-page motion arguing that
the Court could have conducted a safe trial in October 2020, and
highlights the health measures implemented by several state courts,
including the Orange County Superior Court, the Los Angeles County
Superior Court, the Riverside County Superior Court, and others,
along with the number of jury trials those courts conducted within a
year of the pandemic. (Mot. at 48-95.) Defendant also points to the

1    Southern District of California's resumption of jury trials in August
2    2020.

3         Defendant's argument that the Court could have conducted a safe
4    trial was rejected in Olsen.  The Ninth Circuit held that the Central
5    District was permitted to "temporarily suspend jury trials in the
6    interest of public health" in light of the health risks posed by the
7    COVID-19 pandemic.  21 F.4th at 1047.  It noted that even though
8    state courts within the Central District were conducting jury trials,
9    that it did not necessarily mean that they were conducting those
10   trials safely.  Id. at n.10.

11        But even assuming, for purposes of argument, that the Court
12   could have conducted a safe enough trial in October 2020, this is at
13   most one factor in defendant's favor.  As discussed above, the
14   remainder of the Olsen factors weigh heavily in favor of an ends-of-
15   justice continuance.

16        **C.   Any Dismissal Should be Without Prejudice**

17        Should the Court find that dismissal is warranted, the dismissal
18   should be without prejudice.  "In determining whether to dismiss the
19   case with or without prejudice, the court shall consider, among
20   others, each of the following factors: [1] the seriousness of the
21   offense; [2] the facts and circumstances of the case which led to the
22   dismissal; and [3] the impact of a reprosecution on the
23   administration of this chapter and on the administration of justice."
24   18 U.S.C. § 3162(a)(2).  "The defendant has the burden of proving
25   that the delay meets the criteria for dismissal."  United States v.
26   Medina, 524 F.3d 974, 980 (9th Cir. 2008).  All of these factors
27   weigh against dismissal of the Indictment with prejudice.

28

                                    15

1              1.   The Seriousness of Defendant's Crimes Weigh Against
                    Dismissal with Prejudice

2

3           As recognized by this Court, the first factor, the seriousness

4      of the offense, "prescribing dangerous combinations and unnecessary

5      amounts of highly regulated pain medications" "weighs in favor of a

6      dismissal without prejudice."  (Dkt. 98 at 17).

7              2.   Defendant's Three-Year Delay and Absence of
                    Prosecutorial Culpability Weigh Against Dismissal with
8                   Prejudice

9           The second factor, the facts and circumstances that led to the

10     dismissal, also weighs in favor of a dismissal without prejudice.  As

11     the Circuit explained, the focus of this inquiry centers on the

12     specific facts of defendant's case, not "the Central District's

13     suspension of jury trials."  Olsen, 21 F.4th at 1048.

14          The government did not act in bad faith or engage in "a pattern

15     of neglect", Taylor, 487 U.S. at 339, so as to make a dismissal with

16     prejudice appropriate.  As both the Circuit and this Court have

17     noted, the government is not at fault for the failure to try

18     defendant within the Speedy Trial Act's time constraints.  See Olsen,

19     F.4th at 1046 (finding that at the time defendant invoked his Speedy

20     Trial rights "the prosecution had been ready for trial for months and

21     was wholly blameless for the Central District's suspension of jury

22     trials."; id. at 1048 (noting "the absence of any prosecutorial

23     culpability in causing the delay"); (Dkt. 52, Tr. at 20) ("It's not

24     the government's fault.  I know the government's ready."); (Dkt. 100

25     at 4) ("It was the judges' fault.  It wasn't the government's

26     fault.").  The Central District made the decision to suspend jury

27     trials, not the government.

28

1    Defendant cites the Second Circuit's opinion in United States v.

2    Bert, 814 F.3d 70 (2d Cir. 2016) to argue that a delay caused by the

3    Court can justify a dismissal with prejudice.  (Mot. at 104-106.)  In

4    Bert, the Court took over a year to rule on the defendant's motion to

5    suppress after it had taken the motion under advisement, all while

6    the defendant remained in custody, and as the Speedy Trial clock

7    elapsed.  814 F.3d at 74.

8    Bert is inapplicable.  Unlike in Bert, this Court *did not* cause

9    the delay.  To the contrary, the Court sought to summon jurors for

10   the October 13, 2020 jury trial, but its request was denied pursuant

11   to the Central District's jury trial suspension.  (See Dkt. Nos. 68,

12   69.)  The Circuit, moreover, has explained that the Central

13   District's suspension of jury trials was not part of the "facts and

14   circumstances of Olsen's case."  Olsen, 21 F.4th at 1048.

15   Accordingly, the Central District's jury trial suspension should play

16   no role in the analysis of whether to dismiss the Indictment with or

17   without prejudice.

18   And unlike the defendant in Bert, defendant here was on pretrial

19   release and did not sit in custody as the Speedy Trial deadline

20   elapsed.  Further, the Second Circuit held that the government in

21   Bert engaged in "negligent conduct," by taking "no action whatsoever

22   in this case during the year in which [the defendant's] motion was

23   under advisement."  814 F.3d at 86.  As explained above, the

24   government was not negligent here.  Worst still for defendant, Bert

25   did not even hold that the case should be dismissed with prejudice;

26   it simply remanded the case for the district court to complete its

27   analysis in light of its opinion.  Id. at 86-87.

28

17

1  Defendant, on the other hand, is responsible for continuing the

2  trial for over three years, all while he remained on pretrial

3  release.  Defendant requested eight Speedy Trial continuances, which

4  collectively continued the trial date from September 5, 2017 to

5  October 13, 2020.  Prior to the COVID-19 pandemic, the government

6  opposed defendant's request for a fifth continuance and sought to try

7  him on November 5, 2019, but defendant indicated that he needed

8  additional time.  Defendant's justifications for this delay,

9  including the volume of discovery and his counsel's need for more

10 time to adequately prepare for trial (see Mot. at 6-10) do not change

11 the fact that the delay here was of defendant's own doing.  Because

12 of "the years of continuances Olsen obtained while on pre-trial

13 release and the absence of any prosecutorial culpability in causing

14 the delay," Olsen, 21 F.4th at 1048, the facts and circumstances that

15 led to the dismissal in this case weigh against dismissal with

16 prejudice.

17            3.   Impact of Reprosecution on the Administration of
                   Justice Weighs in Favor of a Dismissal Without
18                 Prejudice

19 Because the impact of reprosecution under the facts of this case

20 would not imperil the administration of justice, any dismissal should

21 be without prejudice.  While defendant urges the Court to again

22 dismiss the Indictment with prejudice to teach the Central District

23 and the government "a necessary lesson," (Mot. at 108), the Circuit

24 has already rejected this argument as irrelevant to the inquiry at

25 hand.  Olsen, 21 F.4th at 1048.  It held that the "perceived need to

26 deter the Central District from continuing its jury trial suspension"

27 was not a case-specific factor.  Id. ("[i]t appears that the only

28

1  case-specific factor the court considered was the seriousness of

2  Olsen's crimes").

3       Under the specific facts and circumstances of this case,

4  including the lack of prosecutorial misconduct or neglect, the lack

5  of prejudice to the defendant who remained on bond during the

6  entirety of this delay and who himself requested a delay of over

7  three years, and the fact that the Court dismissed the Indictment on

8  the very day after the Speedy Trial clock expired, the proper remedy,

9  should the Court dismiss the Indictment, is dismissal without

10  prejudice.  As the Circuit emphasized, "[d]ismissal without prejudice

11  is not a toothless sanction: it forces the Government to obtain a new

12  indictment if it decides to reprosecute, and it exposes the

13  prosecution to dismissal on statute of limitations grounds."  Id.

14  1048-49 (citing Taylor, 487 U.S. at 342).

15       The Court should not dismiss the Indictment because defendant's

16  Speedy Trial Act rights were not violated.  However, should the Court

17  dismiss the Indictment, it should do so without prejudice.

18      **D.**  **Defendant's Sixth Amendment Right to a Speedy Trial was Not**

19         **Violated**

20       Defendant also alleges that his Sixth Amendment right to a

21  Speedy Trial has been violated. (Mot. at 109.)  His argument is

22  unavailing because the length of the delay in this case is not

23  excessive and the delay is attributable to defendant's own conduct,

24  specifically, his successive requests for continuances and his

25  decision to substitute counsel.  Moreover, defendant cannot establish

26  actual prejudice.

27

28

1          1.   Legal Standard

2       The Sixth Amendment guarantees that "[i]n all criminal

3  prosecutions, the accused shall enjoy the right to a speedy and

4  public trial."  Under Barker v. Wingo, 407 U.S. 514, 530 (1972),

5  courts review four factors in determining whether a defendant has

6  been deprived of his right to a speedy trial: (1) the length of the

7  delay; (2) the reason for the delay; (3) the defendant's assertion of

8  his right to a speedy trial; and (4) the prejudice to the defendant.

9  "[N]one of the four factors identified [is] either a necessary or

10 sufficient condition to the finding of a deprivation of the right of

11 speedy trial.  Rather, they are related factors and must be

12 considered together with such other circumstances as may be

13 relevant."  Barker, 407 U.S. at 533.

14         2.   Length of Delay

15      The first Barker factor, the length of the delay, does not weigh

16 in defendant's favor.  The length of the delay "is a threshold

17 issue."  United States v. Gregory, 322 F.3d 1157, 1161 (9th Cir.

18 2003).  Under the Sixth Amendment, delay is measured from "the time

19 of the indictment to the time of trial."  United States v. Sears,

20 Roebuck & Co., 877 F.2d 734, 739 (9th Cir. 1989).  "Although there is

21 no bright-line rule, courts generally have found that delays

22 approaching one year are presumptively prejudicial" that require

23 inquiry into the other Barker factors.  Gregory, 322 F.3d at 1161-62.

24 The length is considered in light of "the seriousness of the charges,

25 the volume of discovery, and the [complexity of the] evidence

26 involved."  Doyle v. Law, 464 F. App'x 601, 603 (9th Cir. 2011).

27 Here, the length of the delay calculated from the time of the

28 Indictment to October 27, 2020, is approximately 40 months.  This

1    amount of delay is not excessive, especially in light of the
2    seriousness of the charges, the volume of discovery, and the
3    complexity of the evidence involved.  See United States v. King, 483
4    F.3d 969, 976 (9th Cir. 2007) (holding that "nearly two years" was
5    "not excessive" and "d[id] not seriously weigh in [the defendant]'s
6    favor"); see also Barker, 407 U.S. at 534 (no Speedy Trial violation
7    despite defendant spending four years under indictment, including ten
8    months in custody).  As explained above, defendant is facing 34
9    counts of prescribing and distributing controlled substances, namely,
10   oxycodone, amphetamine salts, alprazolam, and hydrocodone.  These
11   counts carry maximum penalties ranging from 5 to 20 years'
12   imprisonment.  The Court has concluded that it is a "serious" case.
13   (Dkt. 51, Tr. at 8.)  As conceded by defense counsel in a prior court
14   filing, the case involves an extraordinary volume of discovery and
15   complicated evidence that require the retaining of an expert.  It
16   involves 35 counts relating to conduct that spans over 3 years and
17   the discovery contains approximately 77,000 files, which is about 41
18   GB.  (Dkt 36.)  Because these files include recordings of undercover
19   patient visits and thousands of prescriptions, the parties had to
20   retain experts to review and analyze the evidence.  (See id.)

21        More importantly, as Olsen plainly held, the Speedy Trial Act
22   was not violated.  The Ninth Circuit has held that "it will be an
23   unusual case in which the time limits of the Speedy Trial Act have
24   been met but the sixth amendment right to speedy trial has been
25   violated."  United States v. Nance, 666 F.2d 353, 360 (9th Cir.
26   1982); see also, United States v. Baker, 63 F.3d 1478, 1497 (9th Cir.
27   1995) ("Speedy Trial Act affords greater protection to a defendant's
28   right to a speedy trial than is guaranteed by the Sixth Amendment,

1   and therefore a trial which complies with the Act raises a strong

2   presumption of compliance with the Constitution.").  A strong

3   presumption of compliance with the Sixth Amendment therefore applies

4   to the case at hand.  As such, the length of the delay does not weigh

5   in defendant's favor.

6         3.   Reason for the Delay

7       The second Barker factor, the reason for the delay, weighs

8   substantially against a finding that the Sixth Amendment Speedy Trial

9   violation.

10      "[T]he reason for the delay . . . is the focal point of the

11  [Barker] inquiry."  King, 483 F.3d at 976.  "A deliberate attempt to

12  delay the trial in order to hamper the defense should be weighted

13  heavily against the government."  Barker, 407 U.S. at 531.  Whereas

14  "[a] more neutral reason such as negligence or overcrowded courts

15  should be weighted less heavily."  Id.  "[A] valid reason, such as a

16  missing witness, should serve to justify appropriate delay."  Id.

17      "On the other hand, delay attributable to the defendant's own

18  acts or to tactical decisions by defense counsel will not bolster

19  defendant's speedy trial argument."  McNeely v. Blanas, 336 F.3d 822,

20  827 (9th Cir. 2003).  In King, the Ninth Circuit held that the second

21  Barker factor weighed heavily against a Sixth Amendment violation.

22  There, the district court had "granted continuances at the request of

23  [the defendant] and his attorney," delaying the defendant's trial for

24  nearly two years.  King, 483 F.3d at 976.  The case was also

25  extraordinarily complex, involving banking and identity-theft

26  conspiracy.  Id.  Furthermore, the defendant "substituted a new

27  attorney halfway through the proceedings, which necessarily required

28  the judge to allow extra time for new counsel to prepare."  Id.

1  Under these circumstances, the Ninth Circuit held that there was no
2  violation of the Sixth Amendment.  Id. at 977.

3       The instant case mirrors King.  Here, defendant requested eight
4  continuances, including one over the government's objection,
5  "delaying his trial for well over three years."  Olsen, 21 F.4th at
6  1046.  Defendant's deliberate and repeated decisions to continue the
7  trial date cuts against a finding of a Speedy Trial violation.  See
8  United States v. Shetty, 130 F.3d 1324, 1331 (9th Cir. 1997)
9  (reversal of conviction on speedy trial grounds not warranted where
10 defendant stipulated to continuances).  This case, like King, is
11 complex, requiring expert opinion.  And like the defendant in King,
12 defendant here substituted new counsel nearly 18 months after
13 defendant's initial appearance, which prevented the trial from
14 proceeding on June 10, 2019.  (Dkt Nos. 27, 36.)  Further, the Ninth
15 Circuit and this Court have held that the government is not at fault
16 for the delay since it was the Central District at large that decided
17 not to conduct jury trials.  Olsen, 21 F.4th at 1046 (finding that at
18 the time defendant invoked his Speedy Trial rights "the prosecution
19 had been ready for trial for months and was wholly blameless for the
20 Central District's suspension of jury trials."); (see also, Dkt 52,
21 Tr. at 16, 20.)  Thus, the second Barker factor substantially tilts
22 in favor of finding no Sixth Amendment violation.

23            4.   Defendant's Assertion of His Right
24      The third Barker factor also weighs against defendant's Speedy
25 Trial violation claim.  "[A] defendant's assertion of or failure to
26 assert his right to a speedy trial is one of the factors to be
27 considered in an inquiry into the deprivation of the [Sixth
28 Amendment] right."  Barker, 407 U.S. at 528.  "[A]n improper or

untimely assertion of speedy trial rights may weigh in favor of rejecting a defendant's motion to dismiss for violation of these rights, [but] the mere fact of proper, timely assertion does not warrant dismissal." United States v. Turner, 926 F.2d 883, 889 (9th Cir. 1991). "These assertions, however, must be viewed in the light of respondents' other conduct." United States v. Loud Hawk, 474 U.S. 302, 314 (1986). Where the defendant made "successive requests for continuances" and was "responsible for much of the delay," this factor is weighed against the defendant. United States v. Lam, 251 F.3d 852, 859 (9th Cir. 2001).

Defendant delayed in invoking his speedy trial rights. On August 20, 2020, three years and eight continuances after the filing of the Indictment on July 6, 2017, defendant "for the first time, invoked his right to a speedy trial and expressed a desire to proceed with a jury trial on October 13, 2020." Olsen, 21 F.4th at 1042.

Defendant was responsible for this delay. Defendant requested the eight continuances. (Dkt. Nos. 18, 20, 22, 25, 34, 42, 43, 45.) When the government sought to try him in November 2019, he objected and filed an ex parte application to continue the trial. Defendant also waited 18 months to substitute his prior counsel and waited over three years before filing a motion to suppress. Based on Defendant's delay in invoking his Speedy Trial rights and numerous requests for continuances, the third Barker factor counsels against finding a Sixth Amendment violation.

### 5. Prejudice to Defendant

Because defendant cannot prove prejudice, the fourth Barker factor militates against a dismissal on Sixth Amendment grounds. "[W]hether actual prejudice must be shown for delays caused by the

government's negligence depends on the length of the delay and the facts of the case." United States v. Martinez-Alcala, 578 F. App'x 650, 651 (9th Cir. 2014). "Where the delay is not 'great,' . . . courts may require a showing of prejudice, even where each factor weighs in favor of the defendant." Martinez-Alcala, 578 F. App'x at 651; see also Gregory, 322 F.3d at 1165 (holding that a 22-month delay did not excuse the defendant from demonstrating actual prejudice). Thus, the Court must "weigh the reasons for and the extent of the delay against the evidence of actual prejudice." United States v. Beamon, 992 F.2d 1009, 1013 (9th Cir. 1993).

As explained above, the delay from indictment to October 27, 2020, (about 40 months) is not great. More importantly, all of the delay is attributable to defendant. Defendant requested eight continuances up to October 13, 2020. Any delay thereafter is also not attributable to the government as the government was "wholly blameless for the Central District's suspension of jury trials. Olsen, 21 F.4th at 1046. Because the delay is attributable to defendant, defendant must establish actual prejudice. United States v. Krug, 666 F. App'x 665, 667-68 (9th Cir. 2016) (34-month delay, with 20 months attributable to government negligence, did not relieve defendant from showing actual prejudice).

Defendant cannot show actual prejudice. Defendant, who did not spend a single night in custody,[3] was on bond during the entirety of

---

[3] According to Judge Bumatay's concurrence in the denial of rehearing en banc, the fact that defendant was on pre-trial release is by itself nearly fatal to defendant's Speedy Trial right claim. "[T]he primary guarantee of the right is to protect against prolonged *pretrial detention* by the government. Olsen was on bail pretrial, and while the indefinite suspension of jury trials is disconcerting, the trial delay doesn't appear to offend the core right as

*(footnote cont'd on next page)*

the delay and suffered, at most, "minimal prejudice." Olsen, 21
F.4th at 1046.  All that defendant can claim is that he has suffered
the type of prejudice present in every criminal case, including
disruption of employment, and anxiety, among other factors.  (Mot. at
108.)  These consequences flow from the fact of defendant's arrest,
not from any trial delay.  United States v. Simmons, 536 F.2d 827,
831–32 (9th Cir. 1976) ("Conclusory allegations of general anxiety
and depression are present in almost every criminal prosecution.  We
find nothing in the record which distinguishes the emotional strain
experienced by Simmons from other criminal defendants.").  Because
defendant cannot show that he was prejudiced from the over three-year
delay that he himself requested, his Sixth Amendment Speedy Trial
right claim must fail.

6.   The Central District's Jury Trial Suspension Did Not
Violate the Sixth Amendment

Unable to establish a Sixth Amendment violation under the Barker
factors, defendant further argues that the Central District's jury
trial suspension itself violated the Sixth Amendment.  (Mot. at 109.)

Olsen squarely rejected this argument.  "The Central District of
California did not cast aside the Sixth Amendment when it entered its
emergency orders suspending jury trials based on unprecedented public
health and safety concerns.  To the contrary, the orders make clear
that the decision to pause jury trials and exclude time under the
Speedy Trial Act was not made lightly."  21 F.4th at 1049.

Defendant's reliance on United States v. Allen, 34 F.4th 789
(9th Cir. 2022), to argue a violation of the Sixth Amendment right to

established by the Sixth Amendment."  21 F.4th at 1058 (Bumatay, J.)
(concurring in denial of reh'g en banc) (emphasis in original).

26

a Speedy Trial is misplaced.  In Allen, the Ninth Circuit held that the district court violated the Sixth Amendment right to a public trial by precluding members of the public from entering the courtroom pursuant to COVID-19 health and safety protocols.  Id. at 800.  In reaching this holding, the Ninth Circuit applied the relevant factors in assessing a district court's total closure of a courtroom, including: (1) whether there was "an overriding interest based on findings that closure is essential to preserve higher values"; (2) whether the closure was "narrowly tailored to serve" the overriding interest; and (3) whether the district court considered "reasonable alternatives to closing the courtroom."  Id. at 797.

These factors have no bearing on the issue before this Court, which is whether the delay in bringing defendant to trial violated the Sixth Amendment right to a speedy trial.  As discussed in detail above, that Barker factors govern that inquiry and, as applied to defendant's case, they heavily weigh against finding a Speedy Trial right violation.

Similarly, Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63 (2020), does not aid defendant in establishing a violation of his Speedy Trial right.  At issue in that case were New York's COVID-19 related restrictions on attendance at religious services.  Id. at 65-66.  As non-neutral and non-generally applicable restrictions, to pass constitutional muster, the restrictions were required to be "narrowly tailored," and to "serve a 'compelling' state interest." Id. at 67.  The Supreme Court held that the restrictions were not narrowly tailored as there were "many other less restrictive rules" that the state could have enacted to minimize the risk associated with the attendance of religious services during the pandemic.  Id.

27

1    Roman Catholic's analysis of the plaintiffs' First Amendment
2    rights, involving strict scrutiny review, has no bearing on the Sixth
3    Amendment right to a Speedy Trial, which is governed by the Barker
4    factors.  Moreover, Olsen cited Roman Catholic's admonition that
5    "[e]ven in a pandemic, the Constitution cannot be put away and
6    forgotten," id. at 63, and explained that "[t]he Central District of
7    California did not cast aside the Sixth Amendment" when it issued its
8    jury trial suspensions.  Olsen, 21 F.4th at 1049.
9    While "reasonable minds may differ" on whether the Central
10   District adopted the proper approach in suspending jury trials,
11   Olsen, 21 F.4th at 1049, the jury trial suspension did not violate
12   defendant's Speedy Trial right.
13   **IV.  CONCLUSION**
14   For the foregoing reasons, the government respectfully requests
15   that this Court reinstate the Indictment, grant an appropriate ends-
16   of-justice continuance, and set this case for a trial.
17
18
19
20
21
22
23
24
25
26
27
28