JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
BRETT A. SAGEL (Cal. Bar. No. 243918)
DANBEE C. KIM (Cal. Bar. No. 350014)
CAITLIN J. CAMPBELL (Cal. Bar No. 324364)
Assistant United States Attorneys
     UNITED STATES ATTORNEY'S OFFICE
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3598
              (213) 894-6530
              (714) 338-3541
    Email: brett.sagel@usdoj.gov
         danbee.kim@usdoj.gov
         caitlin.campbell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 8:17-cr-00076-JWH |
|---|---|
|      Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
|         v. | Trial Date: 03/24/25 at 9:00 a.m. |
| JEFFREY OLSEN, | |
|      Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Brett A. Sagel, Danbee C. Kim, and Caitlin J. Campbell hereby files its Trial Memorandum.

    This filing is based upon the attached memorandum of points and

//

//

1  authorities, the files and records in this case, and such further

2  evidence and argument as the Court may permit.

3

4  Dated: March 14, 2025          Respectfully submitted,

5                                 JOSEPH T. MCNALLY
                                   Acting United States Attorney
6
                                   LINDSEY GREER DOTSON
7                                  Assistant United States Attorney
                                   Chief, Criminal Division
8

9                                  ___/s/ _Caitlin J. Campbell_____
                                   BRETT A. SAGEL
10                                 DANBEE C. KIM
                                   CAITLIN J. CAMPBELL
11                                 Assistant United States Attorneys

12                                 Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        2

# TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES.................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    STATUS OF THE CASE.............................................1

      A.    Procedural Background....................................1

      B.    Pretrial Motions........................................1

            1.    Defendant's Motion in Limine to Exclude the Use
                  of Inflammatory Language..........................1

            2.    Defendant's Motion in Limine to Exclude Evidence
                  of Uncharged Patient Deaths and Renewed Motion in
                  Limine to Exclude Evidence of Uncharged Patient
                  Deaths............................................2

            3.    Defendant's Motion in Limine to Exclude Evidence
                  of Other Acts.....................................2

            4.    Defendant's Motion in Limine to Permit Attorney-
                  Conducted Voir Dire...............................2

            5.    Defendant's Motions to Dismiss for Improper
                  Delegation and Vagueness, and for Sixth Amendment
                  Speedy Trial Violations...........................3

            6.    Government's Motion in Limine to Limit Testimony
                  of Defense Expert Dr. James Murphy................3

            7.    Government's Motion in Limine to Exclude Good
                  Conduct Evidence..................................3

            8.    Government's Motion in Limine to Admit
                  Prescription Data.................................3

      C.    Government's Case-in-Chief...............................4

II.   ELEMENTS OF THE OFFENSE........................................6

      A.    Counts One Through 34 – Distribution of Controlled
            Substances..............................................6

      B.    Count 35 – False Statement on a DEA Registration
            Application.............................................7

III.  LEGAL AND EVIDENTIARY ISSUES...................................8

      A.    Photographs.............................................8

i

**<u>TABLE OF CONTENTS (CONTINUED)</u>**

<u>DESCRIPTION</u>                                                          <u>PAGE</u>

    B.   Video Recordings.........................................9

    C.   Transcripts of Recorded Conversations...................10

    D.   Hearsay................................................10

         1.   The Government May Introduce Defendant's Statements......................................10

         2.   The Government May Introduce Statements of Persons in Conversation with Defendant.............12

         3.   The Government May Introduce Prescriptions and Medical Records...................................12

         4.   The Government May Introduce Patient Records.......13

    E.   Cross-Examination of Defendant..........................14

    F.   Reciprocal Discovery....................................15

    G.   Authentication, Identification, and Chain of Custody.....16

    H.   Business Records........................................17

    I.   CURES Reports...........................................18

    J.   Expert Evidence.........................................20

IV.  REMAND UNDER THE MANDATORY DETENTION ACT.....................21

V.   CONCLUSION..................................................22

## TABLE OF AUTHORITIES

DESCRIPTION                                                                PAGE(S)

**Federal Cases**

Boerner v. Brown & Williamson Tobacco Co.,
    394 F.3d 594 (8th Cir. 2005)  .................................  19

Breneman v. Kennecott Corp.,
    799 F.2d 470 (9th Cir. 1986)  .................................  12

Crawford v. Washington,
    541 U.S. 36 (2004)  ...........................................  18

United States v. Feingold,
    454 F.3d  ....................................................  6, 7

Gallego v. United States,
    276 F.2d 914 (9th Cir. 1960)  .................................  17

La Porta v. United States,
    300 F.2d 878 (9th Cir. 1962)  .................................  18

Lucero v. Stewart,
    892 F.2d 52 (9th Cir. 1989)  ..................................  8

McGautha v. California,
    402 U.S. 183 (1971)  ..........................................  14

Ohler v. United States,
    529 U.S. 753 (2000)  ..........................................  14

Reyes v. United States,
    383 F.2d 734 (9th Cir. 1967)  .................................  17

Ruan v. United States,
    597 U.S. 450 (2022)  .........................................  6-7

Tome v. United States,
    513 U.S. 150 (1995)  ...................................  11-12, 12

United States v. Aceves-Rosales,
    832 F.2d 1155 (9th Cir. 1987)  ................................  16

United States v. Asuncion,
    2017 WL 11530425 (E.D. Wash. Nov. 15, 2017)  ..................  12

United States v. Beltran-Rios,
    878 F.2d 1208 (9th Cir. 1989)  ................................  20

United States v. Black,
    767 F.2d 1334 (9th Cir. 1985)  .............................  15, 16

United States v. Blackwood,
    878 F.2d 1200 (9th Cir. 1989) (per curiam)  ..................  16

1

**TABLE OF AUTHORITIES (CONTINUED)**

2   <u>DESCRIPTION</u>                                                    <u>PAGE</u>

3   **Federal Cases**

4   <u>United States v. Boccone,</u>
    2014 WL 643016 *3-4 (4th Cir. 2014) ......................... 20

5
    <u>United States v. Bruner,</u>
6   657 F.2d 1278 (D.C. Cir. 1981) .............................. 13

7   <u>United States v. Cervantes-Flores,</u>
    421 F.3d 825 (9th Cir. 2005) ................................ 18

8   <u>United States v. Chu Kong Yin,</u>
    935 F.2d 990 (9th Cir. 1991) ............................ 16, 17
9
    <u>United States v. Collicott,</u>
10  92 F.3d 973 (9th Cir. 1996) ................................. 11

11  <u>United States v. Cuozzo,</u>
    962 F.2d 945 (9th Cir. 1992) ................................ 15
12
    <u>United States v. Davis,</u>
13  564 F.2d 840 (9th Cir. 1978) ................................. 6

14  <u>United States v. De Bright,</u>
    730 F.2d 1255 (9th Cir. 1984) (en banc) ..................... 17
15
    <u>United States v. Espinosa,</u>
16  827 F.2d 604 (9th Cir. 1987) ................................ 20

17  <u>United States v. Ferguson,</u>
    776 F.2d 217 (8th Cir. 1985) ................................. 8
18
    <u>United States v. Fernandez,</u>
19  839 F.2d 639 (9th Cir. 1988) ................................ 10

20  <u>United States v. Hagege,</u>
    437 F.3d 943 (9th Cir. 2006) ................................ 18
21
    <u>United States v. Harrington,</u>
22  923 F.2d 1371 (9th Cir. 1991) ............................... 17

23  <u>United States v. Johnson,</u>
    735 F.2d 1200 (9th Cir. 1984) ............................... 20
24
    <u>United States v. Kaiser,</u>
25  660 F.2d 724 (9th Cir. 1981) ................................ 17

26  <u>United States v. King,</u>
    472 F.2d 1 (9th Cir. 1972) .................................. 16
27
    <u>United States v. Matta-Ballesteros,</u>
    71 F.3d 754 (9th Cir. 1995) .............................. 9, 17

28

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                      <u>PAGE</u>

**Federal Cases**

<u>United States v. May</u>,
   622 F.2d 1000 (9th Cir. 1980) ............................... 9

<u>United States v. McDowell</u>,
   918 F.2d 1004 (1st Cir. 1990) .............................. 12

<u>United States v. Miranda-Uriarte</u>,
   649 F.2d 1345 (9th Cir. 1981) .............................. 14

<u>United States v. Nash</u>,
   115 F.3d 1431 (9th Cir. 1997) .............................. 16

<u>United States v. Navarro-Varelas</u>,
   541 F.2d 1331 (9th Cir. 1976) .............................. 11

<u>United States v. Oaxaca</u>,
   569 F.2d 518 (9th Cir. 1978) ............................... 9

<u>United States v. Oriyomi</u>,
   449 F. App'x 681 (9th Cir. 2011) .......................... 15

<u>United States v. Ortega</u>,
   203 F.3d 675 (9th Cir. 2000) ......................... 10-11, 11

<u>United States v. Ospina</u>,
   739 F.2d 448 (9th Cir. 1984) .............................. 14

<u>United States v. Paulino</u>,
   13 F.3d 20 (1st Cir. 1994) ................................ 14

<u>United States v. Robinson</u>,
   967 F.2d 287 (9th Cir. 1992) .............................. 17

<u>United States v. Rosenberg</u>,
   515 F.2d 190 (9th Cir. 1975) ............................ 6, 13

<u>United States v. Scholl</u>,
   166 F.3d 964 (9th Cir. 1999) .............................. 16

<u>United States v. Simas</u>,
   937 F.2d 459 (9th Cir. 1991) .............................. 20

<u>United States v. Smith</u>,
   918 F.2d 1551 (11th Cir. 1990) ............................ 12

<u>United States v. Stearns</u>,
   550 F.2d 1167 (9th Cir. 1977) ............................ 8-9

<u>United States v. Towns</u>,
   718 F.3d 404 (5th Cir. 2013) .............................. 19

### TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                          PAGE

**Federal Case**

United States v. Turner,
   528 F.2d 143 (9th Cir. 1975) ................................. 10

**Federal Statutes**

18 U.S.C. § 3142 ............................................... 21

18 U.S.C. § 3143 ............................................... 21

21 U.S.C. § 822 ................................................. 8

21 U.S.C. § 843 ................................................. 8

21 U.S.C. § 841 ........................................ 6, 1, 6, 21

**Other**

21 C.F.R. § 1301.11 ............................................. 8

Fed. R. Crim. P. 16 ........................................... 15

Fed. R. Evid. 608 ............................................. 15

Fed. R. Evid. 702 ............................................. 21

Fed. R. Evid. 703 ............................................. 21

Fed. R. Evid. 704 ............................................. 21

Fed. R. Evid. 801 ......................................... 10, 13

Fed. R. Evid. 803 ......................................... 17, 19

Fed. R. Evid. 807 ............................................. 13

Fed. R. Evid. 902 ............................................. 18

Fed. R. Evid. 1001 ............................................. 9

Fed. R. Evid. 106 ............................................. 11

Fed. R. Evid. 901 .......................................... 9, 16

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   STATUS OF THE CASE**

**A.   Procedural Background**

In July 2017, defendant Jeffrey Olsen ("defendant") was charged with 34 counts of distributing prescription controlled substances, including oxycodone, amphetamine salts, alprazolam, and hydrocodone, outside the usual course of professional practice and without a legitimate medical purpose, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(1)(E), and (b)(2).  Defendant was also charged with one count of knowingly making a material false statement in a Drug Enforcement Administration ("DEA") application, in violation of 21 U.S.C. §§ 843(a)(4)(A).  Following two district court dismissals and two Ninth Circuit reversals of those dismissals, this case was assigned to this Court for trial.  Trial is currently set for March 24, 2025 and is expected to last 10 to 11 court days inclusive of the defense's case.

**B.   Pretrial Motions**

**1.   Defendant's Motion in Limine to Exclude the Use of Inflammatory Language**

In 2020, defendant moved in limine to exclude the use of certain inflammatory language at trial, including "pill mill," "drug dealer in a white coat," "opioid crises," and "victim" as legal conclusions and unfairly prejudicial under Rule 403.  Dkt. 55.  The government opposed that motion but stated that it would be referring to the undercover office and confidential sources as "drug seekers" or officers "posing as drug addicts," rather than as a "victim."  Dkt. 75 at 3.  At the hearing on the motion, the government also represented that it would not use these terms unless the evidence or

1  reasonable inference from it supports that use.  Dkt. 94 at 2-3.  The

2  Court denied defendant's motion, ruling, among other things, that the

3  terms "victim," "pill mill," "drug dealer in a white coat," and

4  "opioid crisis" are not so "unduly prejudicial as to make the jury

5  decide the case on an improper basis."  Id. at 3.

6        2.    Defendant's Motion in Limine to Exclude Evidence of
              Uncharged Patient Deaths and Renewed Motion in Limine
7              to Exclude Evidence of Uncharged Patient Deaths

8        In 2020, defendant moved in limine to exclude any evidence of

9  uncharged patient deaths.  Dkt. 61.  The Court denied that motion,

10 ruling that the deaths of two patients -- R.P. and P.S. -- were

11 admissible under Rule 404(b).  Dkt. 94 at 4.  On February 24, 2025,

12 defendant renewed his prior motion in limine, and again sought to

13 exclude evidence of uncharged patient deaths.  Dkt. 189.  On March

14 10, 2025, the Court granted defendant's renewed motion and excluded

15 evidence of uncharged patient deaths.  Dkt. 234.

16
17       3.    Defendant's Motion in Limine to Exclude Evidence of
              Other Acts

18       On February 24, 2025, defendant moved in limine to exclude

19 evidence of defendant's other bad acts, arguing those acts were not

20 inextricably intertwined and were not otherwise admissible under Rule

21 404(b).  Dkt. 187.  After a conference between counsel, in which the

22 government narrowed the scope of its proposed other acts evidence,

23 the Court granted in part and denied in part defendant's motion.

24 Dkt. 239.

25
26       4.    Defendant's Motion in Limine to Permit Attorney-
              Conducted Voir Dire

27       On February 24, 2025, defendant moved in limine to permit each

28 party one hour of attorney-conducted voir dire.  Dkt. 195.  The Court

denied this motion, ruling that each side may conduct 20 minutes of

attorney-conducted voir dire.  Dkt. 239.

        5.   <u>Defendant's Motions to Dismiss for Improper Delegation
and Vagueness, and for Sixth Amendment Speedy Trial
Violations</u>

On February 24, 2025, defendant filed a motion to dismiss for

improper delegation and vagueness, and for violations of defendant's

Sixth Amendment speedy trial rights.  Dkts. 190-191.  The Court

denied both motions.  Dkt. 239.

        6.   <u>Government's Motion in Limine to Limit Testimony of
Defense Expert Dr. James Murphy</u>

On February 24, 2025, the government moved <u>in limine</u> to limited

defense expert Dr. James Murphy from testifying about: (1)

defendant's mental state or intentions; (2) improperly instructing on

the law or telling the jury what conclusion to reach; and (3) stating

or implying that the government's use of the two confidential sources

and an undercover officer was inappropriate or illegal.  Dkt. 192.

The Court granted this motion.

        7.   <u>Government's Motion in Limine to Exclude Good Conduct
Evidence</u>

On February 24, 2025, the government moved <u>in limine</u> to exclude

evidence of defendant's "good conduct," <u>i.e.</u>, evidence that he wrote

legitimate prescriptions or rendered sound medical care to patients

not named in the indictment.  Dkt. 193.  The Court granted this

motion without prejudice.  Dkt. 293.

        8.   <u>Government's Motion in Limine to Admit Prescription
Data</u>

On February 24, 2025, the government moved <u>in limine</u> to admit

data of defendant's prescribing history from the California

3

Department of Justice's Controlled Substance Utilization Review and Evaluation System ("CURES").  Dkt. 194.  The Court granted this motion.  Dkt. 239.

### C.    Government's Case-in-Chief

The government currently estimates it will call the following witnesses in its case-in-chief:

1) **DEA Supervising Special Agent Keith Bridgford,** who will provide lay testimony about this investigation and expert testimony about drug diversion;

2) **Irvine Police Department Lieutenant Shaheen Jahangard,** who served as the undercover officer in this case;

3) **Kaitlyn Bash,** who served as one of the two confidential sources in this case;

4) **Jewelana Wilson,** who served as one of the two confidential sources in this case;

5) **Retired DEA Special Agent Mark Nomady,** who worked with the two confidential sources;

6) **James Goodell,** who is a patient named in the indictment;

7) **Ken Kausler,** who is a patient named in the indictment;

8) **Los Angeles Police Department Detective Gerald Mimms,** who was part of the team that executed a search warrant at defendant's Newport Beach office;

9) **Laguna Beach Police Department Detective Larry Bammer,** who interviewed defendant about a patient named Michael Gregory;

10) **Health and Human Services/Office of the Inspector General ("HHS/OIG") Forensic Computer Examiner Amy Wong,** who was involved with the collection and forensic extraction of

4

defendant's cellphone, and will provide expert testimony about the extraction process;

11) **HHS/OIG Special Agent Patrick Luk,** who was involved in the collection of defendant's cellphone;

12) **DEA Supervisory Special Agent Stephanie Kolb,** who will provide testimony about defendant's submission of a false DEA registration application;

13) **Dr. Daniel Parker,** who is defendant's former colleague;

14) **Dr. Paul Lynch,** who will provide expert testimony about the standard of care for prescribing controlled substances, and his related review of defendant's treatment of the patients named in the indictment;

15) **California Department of Justice Analyst Amber Davidson,** who will authenticate data obtained from CURES if necessary; and

16) **A Custodian from Practice Fusion,** who will authenticate defendant's electronic patient records if necessary.

The government reserves the right to call rebuttal witnesses, if necessary.

Depending on the length of cross-examination conducted by defendant, the government estimates that it will take no more than six to eight court days to present its case-in-chief after jury selection.  The government currently anticipates that the defense will also present a case that will include one expert witness and several other witnesses.  Defense has stated that it anticipates its case will take two to three court days.

## II.  ELEMENTS OF THE OFFENSE

### A.    Counts One Through 34 – Distribution of Controlled Substances

For the jury to find defendant guilty of count one through 34 seven of the indictment, which charge defendant with distribution[1] of controlled substances outside the usual course of professional practice and without a legitimate medical purpose, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(1)(E), and (b)(2), the government must prove the below elements beyond a reasonable doubt:

  1) the defendant knowingly or intentionally distributed the controlled substance identified in that count in the indictment on or about the dates specified, knowing that it was a controlled substance;

  2) the defendant's distribution of the identified controlled substance was unauthorized; and

  3) the defendant knew he was acting, and intended to act, in an unauthorized manner (that is, when he prescribed each controlled substance, he intended to do so without a legitimate medical purpose and he intended to act outside the usual course of professional practice).

Ruan v. United States, 597 U.S. 450, 457, 467-68 (2022) (holding, in § 841 prosecutions against medical practitioners, that "once a defendant meets the burden of producing evidence that his or her conduct was 'authorized,' the Government must prove beyond a

---

[1] A doctor "distributes" a controlled substance by the act of writing a prescription for a controlled substance.  21 U.S.C. §§ 802(8),(11); Feingold, 454 F.3d at 1006; United States v. Davis, 564 F.2d 840, 845 (9th Cir. 1978); United States v. Rosenberg, 515 F.2d 190, 200 (9th Cir. 1975).

reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner."); United States v. Feingold, 454 F.3d 1001, 1008 (9th Cir. 2006) ("[T]o convict a practitioner under § 841, the government must prove (1) that the practitioner distributed controlled substances, (2) that the distribution of those controlled substances was outside the usual course of professional practice and without a legitimate medical purpose, and (3) that the practitioner acted with intent to distribute the drugs and with intent to distribute them outside the course of professional practice").

In determining whether a prescription was unauthorized, the jury may consider the standards to which medical professionals generally hold themselves, including accepted standards of care among medical professionals.  Feingold, 454 F.3d at 1007 ("only after assessing the standards to which medical professionals generally hold themselves is it possible to evaluate whether a practitioner's conduct has deviated so far from the 'usual course of professional practice' that his actions become criminal" and "[b]oth the Supreme Court and this court have allowed juries to assess the prevailing standards of care among medical professionals in cases involving the criminal prosecution of licensed practitioners" and "the standard for criminal liability 'itself imports considerations of medical legitimacy and accepted medical standards'") (quoting United States v. Boettjer, 569 F.2d 1078, 1081 (9th Cir. 1978)).

**B.   Count 35 – False Statement on a DEA Registration Application**

For the jury to find defendant guilty of count 35 of the indictment, which charges defendant with knowingly and intentionally furnishing false and fraudulent material information in an

7

application submitted to the DEA to obtain a federal controlled

substance registration, the government must prove the below elements

beyond a reasonable doubt:

      1) The defendant furnished false or fraudulent information in

          an application submitted to the DEA to obtain a federal

          controlled substance registration;

      2) The false or fraudulent information was material; and

      3) The defendant acted knowingly or intentionally in

          furnishing the false or fraudulent information.

Furnishing false and fraudulent information also includes omitting

material information.  Information is material if it has a natural

tendency to influence, or was capable of influencing, the DEA's

decision on the registration application.  21 U.S.C. § 843(a)(4)(A);

21 U.S.C. § 822 (establishing federal registration requirement); see

21 C.F.R. § 1301.11 (requiring physicians who prescribe a controlled

substance to register with the Drug Enforcement Administration

("DEA")); United States v. Ferguson, 776 F.2d 217 (8th Cir. 1985)

(affirming conviction under 21 U.S.C. § 843(a)(4)(A) for physician

who provided false answers on an application for DEA registration).

## III. LEGAL AND EVIDENTIARY ISSUES

### A.  Photographs

The government intends to introduce photographs taken of

defendant's Newport Beach office, or of items found in that office.

Photographs may be authenticated by a witness who "identif[ies]

the scene itself [in the photograph] and its coordinates in time and

place."  See Lucero v. Stewart, 892 F.2d 52, 55 (9th Cir. 1989)

(internal quotation marks omitted).  Photographs are generally

admissible as evidence.  United States v. Stearns, 550 F.2d 1167,

1   1171 (9th Cir. 1977) (photographs of crime scene admissible); Fed. R.

2   Evid. 1001(2).  Photographs should be admitted so long as they fairly

3   and accurately represent the event or object in question.  United

4   States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978).  The Ninth

5   Circuit has held that "[p]hotographs are admissible as substantive as

6   well as illustrative evidence."  United States v. May, 622 F.2d 1000,

7   1007 (9th Cir. 1980).

8       **B.   Video Recordings**

9       The government intends to admit the following categories of

10  video and audio recordings: (1) video recordings from the

11  undercover's and confidential sources' undercover visits with

12  defendant; (2) a video recording of defendant's March 2016 interview

13  with DEA agents during the execution of a federal search warrant at

14  his Laguna Beach home; and (3) a pre-search video taken of

15  defendant's Newport Beach office.  Each recording has been made

16  available to the defense and has been placed onto compact discs,

17  which the government will offer as exhibits at trial.  The government

18  will also introduce and play clips of the recordings.

19      There is no rigid set of foundational requirements for admitting

20  recordings.  Rather, the Ninth Circuit has held that recordings are

21  sufficiently authenticated under Federal Rule of Evidence 901(a) if

22  sufficient proof has been introduced "so that a reasonable juror

23  could find in favor of authenticity or identification," which can be

24  done by "proving a connection between the evidence and the party

25  against whom the evidence is admitted" and can be done by both direct

26  and circumstantial evidence.  United States v. Matta-Ballesteros, 71

27  F.3d 754, 768 (9th Cir. 1995), modified by 98 F.3d 1100 (9th Cir.

28  1996).

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.    Transcripts of Recorded Conversations

The recorded statements that the government will seek to introduce in its case-in-chief at trial were in English.  The government has prepared written transcripts of these recordings as an aid to the jury.  See United States v. Turner, 528 F.2d 143, 167 (9th Cir. 1975) (cautionary instruction given that only the recordings were evidence of the conversation).  Copies of the government's transcripts have been provided to the defense, who has reviewed and revised them, and are available, should the court desire them in advance of trial.  These transcripts will be available to the jury simultaneous to the playing of the video, but the transcript will not be admitted in evidence.

### D.    Hearsay

####      1.    The Government May Introduce Defendant's Statements

The government intends to introduce portions of defendant's recorded statements to DEA.  These statements were made during the search of defendant's Laguna Beach residence in March 2016.  The government also intends to introduce text messages defendant exchanged with various persons.  A defendant's out-of-court statement is admissible if offered against him by the government.  See Fed. R. Evid. 801(d)(2)(A); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).  Additionally, statements that are adopted by a party opponent are non-hearsay.  Fed. R. Evid. 801(d)(2)(B).

While the government may present evidence regarding defendant's statements as admissions of a party opponent, defendant may not introduce non-inculpatory statements from that recording.  See United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (non-self-inculpatory statements, even if made contemporaneously with other

10

1  self-inculpatory statements, are inadmissible hearsay).  To permit

2  otherwise would place a defendant's statements "before the jury

3  without subjecting [himself or herself] to cross-examination,

4  precisely what the hearsay rule forbids."  <u>Ortega</u>, 203 F.3d at 682

5  (citation omitted).

6       The rule of completeness also does not entitle a defendant to

7  elicit his or her own inadmissible hearsay statements.  <u>See</u> <u>United</u>

8  <u>States v. Collicott</u>, 92 F.3d 973, 983 (9th Cir. 1996); <u>Ortega</u>, 203

9  F.3d at 682.  Thus, if the government plays only a portion of the

10 recordings in this case, defendant has no right to introduce the

11 remainder of the recording for his or her own benefit.  The "rule of

12 completeness" set forth in Federal Rule of Evidence 106 applies to

13 prevent one party from introducing a tailored snippet of a statement

14 that unfairly misleads the jury.  It is entirely proper, however, to

15 admit segments of a statement without including everything, and

16 adverse parties are not entitled to offer additional statements just

17 because they are there and the proponent has not offered them.

18 <u>Collicott</u>, 92 F.3d at 983.

19      In addition, a defendant cannot rely upon Rule 801(d)(1)(B)

20 (concerning prior consistent statements) as an alternative basis for

21 the admissibility of such testimony. A prior consistent statement is

22 not admissible if it is introduced in the absence of impeachment.

23 <u>See</u> <u>United States v. Navarro-Varelas</u>, 541 F.2d 1331, 1334 (9th Cir.

24 1976).  "The Rules do not accord this weighty, nonhearsay status to

25 all prior consistent statements.  To the contrary, admissibility

26 under the Rules is confined to those statements offered to rebut a

27 charge of 'recent fabrication or improper influence or motive.'"

28 <u>Tome v. United States</u>, 513 U.S. 150, 157 (1995) (citation omitted)

1  (discussing Fed. R. Evid. 801(d)(1)(B) and excluding consistent

2  statements where the declarant made them after the incentive to

3  fabricate arose).  The "significance of the requirement" is that "the

4  consistent statements must have been made before the alleged

5  influence, or motive to fabricate, arose."  Id. at 158; see also

6  Breneman v. Kennecott Corp., 799 F.2d 470, 473 (9th Cir. 1986) ("A

7  prior consistent statement is admissible only if it was made before

8  the witness had a motive to fabricate.").

### 2.   The Government May Introduce Statements of Persons in Conversation with Defendant

11  For context, the government also intends to introduce statements

12  of the DEA agents interviewing defendant, as well as statements from

13  the individuals that were texting with defendant.  Statements like

14  these, which are not being offered for their truth but to provide

15  context for what the defendant said or did, are not hearsay.  United

16  States v. Smith, 918 F.2d 1551, 1559 (11th Cir. 1990); United States

17  v. McDowell, 918 F.2d 1004, 1007-08 (1st Cir. 1990); see also United

18  States v. Asuncion, No. 1:17-CR-02015-EFS-1, 2017 WL 11530425, at *1

19  (E.D. Wash. Nov. 15, 2017) (admitting incoming and outgoing text

20  messages, and reasoning that the incoming text messages were

21  necessary to provide context, and therefore were not hearsay).  This

22  makes sense, as often a defendant's "yes" or "no" answer would be

23  indecipherable to a jury without the question that prompted such a

24  question.

### 3.   The Government May Introduce Prescriptions and Medical Records

27  Among the government's evidence of defendant's distributions are

28  the prescriptions that defendant gave to the undercover agents

following each of the charged undercover meetings.  The undercover
agents obtained these prescriptions directly from defendant.  These
records are non-hearsay because they qualify as an act by defendant,
as defendant's writing of each prescription constitutes the charged
distribution; the prescriptions thus will not be admitted to
establish the truth of any matter asserted therein but rather to
evidence the act of distribution.  In any event, the prescriptions
are admissible as party admissions under Rule 801(d)(2)(A).  <u>See,
e.g.</u>, <u>United States v. Bruner</u>, 657 F.2d 1278, 1285 (D.C. Cir. 1981)
(holding that prescriptions are admissible under FRE 801(d) as an
admission by a party opponent, specifically co-conspirator
statements).  The prescriptions are also admissible under Rule 807 as
they are undoubtedly material, they are more probative of defendant's
illegal prescription-writing activities than any other evidence, and
the interests of justice will be served by their admission.  See Fed.
R. Evid. 807.

       4.   <u>The Government May Introduce Patient Records</u>

     The government also intends to admit at trial certain patient
records and copies of prescriptions that were seized from defendant's
Newport Beach office, or obtained from defendant's electronic file
system.  These documents are also admissible as party admissions
under Rule 801(d)(2)(A).  See <u>United States v. Rosenberg</u>, 515 F.2d
190, 199 200 (9th Cir. 1975) (district court properly admitted
doctor's "patient" files for use against him at trial for violations
of Section 841(a)).

     Additionally, because the documents are defendant's business
records seized from the place at which he conducted business, they
are adopted admissions by a party opponent, and are therefore non-

hearsay under Rule 801(d)(2)(B).  See United States v. Paulino, 13 F.3d 20, 23-24 (1st Cir. 1994) (admitting receipt found during search of defendant's apartment on the ground that "courts frequently have construed possession of a written statement as an adoption of what its contents reveal"); United States v. Ospina, 739 F.2d 448, 451 (9th Cir. 1984) (admitting document seized from defendant's hotel room as adopted admission).

Finally, the records are non-hearsay to the extent that they will not be used for the truth of any matter asserted in the records themselves.  Rather, the absence of medical records or sufficient notes therein will be used as circumstantial evidence of defendant's mental state; namely, that he did not intend to conduct adequate examination of his patients, and that defendant issued the prescriptions in bad faith and without a legitimate medical purpose.

**E.  Cross-Examination of Defendant**

A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony.  See, e.g., Ohler v. United States, 529 U.S. 753, 759 (2000) (citing McGautha v. California, 402 U.S. 183, 215 (1971), vacated in part on other grounds, Crampton v. Ohio, 408 U.S. 941 (1972) ("It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination")).  A defendant has no right to avoid cross-examination on matters that call into question her claim of innocence.  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).  The scope of a defendant's waiver is coextensive

with the scope of relevant cross-examination.  United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver.  Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.").

In addition, a witness's -- including defendant's -- false statements may "on cross-examination, . . . be inquired into if they are probative of the character for truthfulness or untruthfulness" of the witness.  Fed. R. Evid. 608(b); United States v. Oriyomi, 449 F. App'x 681, 682 (9th Cir. 2011) ("Under [Rule 608(b)], prosecutors may cross-examine witnesses about documents so long as they do not enter the documents as extrinsic evidence.").

## F.   Reciprocal Discovery

Rule 16 of the Federal Rules of Criminal Procedure creates certain reciprocal discovery obligations on the part of defendants to produce three categories of materials that he intends to introduce as evidence at trial: (1) documents and tangible objects; (2) reports of any examinations or tests; and (3) expert witness disclosure.  Rule 16 imposes on defendant a continuing duty to disclose these categories of materials.  Fed. R. Crim. P. 16(b)(1)(A), (b)(1)(C), and (c).  In those circumstances where a party fails to produce discovery as required by Rule 16, the rule empowers the district court to "prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances."  The Ninth Circuit has held that where a defendant fails to produce reciprocal discovery, it is well within the district

1  court's discretion to exclude such defense evidence, especially where

2  the defense disclosure was made after the start of trial.  See United

3  States v. Aceves-Rosales, 832 F.2d 1155, 1156-57 (9th Cir. 1987);

4  United States v. Scholl, 166 F.3d 964, 972 (9th Cir. 1999); United

5  States v. Nash, 115 F.3d 1431, 1439-40 (9th Cir. 1997).

6       To date, defendant has only made a limited production to the

7  government consisting of a handful of patient files.  To the extent

8  defendant attempts to introduce or use any documents at trial that he

9  has not produced, or seeks to rely on an undisclosed affirmative

10 defense, the government reserves the right to object and to request

11 that the Court exclude defendant's undisclosed documents or

12 affirmative defense(s).

13       **G.   Authentication, Identification, and Chain of Custody**

14       Federal Rule of Evidence 901(a) provides that "the requirement

15 of authentication or identification as a condition precedent to

16 admissibility is satisfied by evidence sufficient to support a

17 finding that the matter in question is what its proponent claims."

18 Rule 901(a) only requires the government to make a prima facie

19 showing of authenticity or identification "so that a reasonable juror

20 could find in favor of authenticity or identification."  United

21 States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991) (quoting

22 United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989) (per

23 curiam)).  The authenticity of proposed exhibits may be proven by

24 circumstantial evidence.  See United States v. King, 472 F.2d 1, 9-11

25 (9th Cir. 1972).  If the government makes a prima facie showing of

26 authenticity, the Court should admit the evidence.  See United States

27 v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).  The credibility or

28 probative force of the evidence offered is ultimately an issue for

the trier of fact.  Chu Kong Yin, 935 F.2d at 996 (internal quotation
marks omitted).

The government will seek to admit photographs, videos, patient
files (both paper and electronic), and text messages from defendant's
digital devices, among other things.  In establishing chain of
custody as to an item of physical evidence, the government is not
required to call all persons who may have come into contact with the
piece of evidence.  Reyes v. United States, 383 F.2d 734 (9th Cir.
1967); Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960).
Moreover, a presumption of regularity exists in the handling of
exhibits by public officials.  United States v. Kaiser, 660 F.2d 724,
733 (9th Cir. 1981); United States v. De Bright, 730 F.2d 1255, 1259
(9th Cir. 1984) (en banc); United States v. Harrington, 923 F.2d
1371, 1374 (9th Cir. 1991).  Gaps or defects in chain of custody go
to the weight of the evidence rather than its admissibility.  United
States v. Matta-Ballesteros, 71 F.3d 754, 769-70 (9th Cir. 1995);
United States v. Robinson, 967 F.2d 287, 292 (9th Cir. 1992).

### H.  Business Records

The government intends to admit business records (i.e., records
of regularly kept activities), such as bank records reflecting some
of defendant's financial transactions.  Such records of "regularly
conducted activity" fall within an exception to the rule against
hearsay and are admissible either through "the testimony of the
custodian or another qualified witness" or "by a certification that
complies with Rule 902(11)."   Fed. R. Evid. 803(6)(D).  In this
case, absent a stipulation, the government will admit these records
with certifications that comply with Rule 902(11).  Challenges to the
accuracy or completeness of business records ordinarily go to the

17

1  weight of the evidence and not its admissibility.  See, e.g., La

2  Porta v. United States, 300 F.2d 878, 880 (9th Cir. 1962).

3      Certified records – including business records – are self-

4  authenticating when accompanied by a written declaration establishing

5  that (1) the records must have been made at or near the time by, or

6  from information transmitted by, a person with knowledge; and (2) the

7  records must have been made and kept in the course of a regularly

8  conducted business activity.  Fed. R. Evid. 902(11).  Custodian of

9  records declarations may be utilized by the court to provide a

10 foundation for the admission in evidence of business records without

11 creating any confrontation issue under Crawford v. Washington, 541

12 U.S. 36 (2004).  See United States v. Hagege, 437 F.3d 943,957 (9th

13 Cir. 2006); United States v. Cervantes-Flores, 421 F.3d 825, 832-32

14 (9th Cir. 2005).

15     Here, the government has provided notice to defendant that it

16 intends to admit certain records pursuant to rule 902(11) and has

17 provided the associated certifications to defendant in discovery.  To

18 date, defendant has not raised any objection to the admission of any

19 records pursuant to these certifications.

20 **I.    CURES Reports**

21     The government intends to introduce CURES reports of defendant's

22 prescribing history.  CURES reports track prescriptions of Schedules

23 II, III, IV, and V controlled substances filled and reported by

24 pharmacies. The California Department of Justice - Narcotics

25 Enforcement section maintains these reports.  The government also

26 intends to introduce CURES patient activity reports that track

27 whether defendant checked CURES for certain patients.

28

1    The CURES reports, and summaries thereof, that the government

2    intends to introduce are not hearsay as they are public records.

3    They are admissible as public records under Rule 803(8)(B), which

4    include "records, reports, statements or data compilations, in any

5    form, of public offices or agencies, setting forth . . . matters

6    observed pursuant to duty imposed by law as to which matters there

7    was a duty to report."  Fed. R. Evid. 803(8)(B); see, e.g., Boerner

8    v. Brown & Williamson Tobacco Co., 394 F.3d 594, 600-01 (8th Cir.

9    2005) (Surgeon General reports on smoking are admissible as public

10   records even though the data came from work conducted by independent

11   and not government scientists since reports were prepared pursuant to

12   a legal obligation to report information on smoking to Congress and

13   were prepared by "a disinterested" agency).  The rule is premised on

14   "the assumption that a public official will perform his duty

15   properly."  Fed. R. Evid. 803(8)(C) advisory committee note, citing

16   Wong Wing Foo v. McGrath, 196 F.2d 120, 123 (9th Cir. 1952). The

17   CURES data are also separately admissible records of regularly kept

18   activity under Federal Rule of Evidence 803(6) because they track

19   data that pharmacies are mandated to keep and submit as part of their

20   business practices.  See United States v. Towns, 718 F.3d 404, 407-08

21   (5th Cir. 2013) (pharmacy prescription records admissible business

22   records, rejecting defense argument that they should not have been

23   admitted because they "are only kept because of a Texas statue [that]

24   mandates their existence").

25   California Health & Safety Code section 11165(d) requires that

26   for each prescription for Schedules II to V controlled substances,

27   the dispensing pharmacy or clinic shall report dispensing information

28   to the California Department of Justice or a contracted prescription

19

data processing vendor.  Such information must be reported as soon as reasonably possible, but not more than one working day after the date a controlled substance is released to the patient.

Here, the government has produced in discovery the certification of the CURES custodian that the CURES reports of defendant's prescribing history are authentic records.  The same is true of the CURES patient activity reports.  Thus, all the CURES reports are self-authenticating evidence under Rule 902(4), Certified Copies of Public Records.

### J.    Expert Evidence

The government has provided notice that it intends to offer expert testimony to assist the trier of fact in resolving disputed factual questions at trial in the instant matter.  Specifically, the government intends to call: (1) DEA Supervisory Special Agent Keith Bridgford,[2] who will provide testimony about the modus operandi of doctors engaged in the diversion of controlled substances via overprescription, among other things; (2) HHS/OIG Computer Examiner Amy Wong, who will testify as to the forensic extraction process for defendant's cellphone; and (3) Dr. Paul Lynch, who will testify as to

---

[2] Law enforcement officers may provide expert opinion testimony that the defendant's activities match "the usual criminal modus operandi."  United States v. Simas, 937 F.2d 459, 465 (9th Cir. 1991) (quoting United States v. Espinosa, 827 F.2d 604, 611-13 (9th Cir. 1987)).  Such evidence alerts the jury to the possibility that a combination of seemingly innocuous events may indicate criminal behavior.  See, e.g., United States v. Johnson, 735 F.2d 1200, 1202 (9th Cir. 1984).  An experienced agent may testify in the form of an opinion even if that opinion is based in part on information from other agents familiar with the issue.  United States v. Beltran-Rios, 878 F.2d 1208, 1213 n.3 (9th Cir. 1989); United States v. Boccone, 2014 WL 643016 *3-4 (4th Cir. 2014) (upholding the conviction of a nurse practitioner for conspiracy to distribute prescription controlled drugs based on evidence including expert testimony based on "red flags" by medical practitioners).

1 | the standard of care, and whether defendant's conduct in this case
2 | with respect to the patients named in the indictment was consistent
3 | with the standard of care, based on his review of patient files,
4 | undercover recordings, and CURES data, among other things.

5 | If specialized knowledge will assist the trier of fact in
6 | understanding the evidence or determining a fact in issue, a
7 | qualified expert witness may provide opinion testimony on the issue
8 | in question.  Fed. R. Evid. 702.  Expert opinion may be based on
9 | hearsay or facts not in evidence, where the facts or data relied upon
10 | are of the type reasonably relied upon by experts in the field.  Fed.
11 | R. Evid. 703.  An expert may also provide opinion testimony even if
12 | it embraces an ultimate issue to be decided by the trier of fact.
13 | Fed. R. Evid. 704.

## IV.  REMAND UNDER THE MANDATORY DETENTION ACT

Under the Mandatory Detention Act of 1990, the Court "shall order that a person who has been found guilty of an offense" enumerated in 18 U.S.C. § 3142(f)(1)(A)-(C) "be detained" while "awaiting imposition or execution of sentence."  18 U.S.C. § 3143(a)(2).  This mandate applie to any conviction for:

> (A)  A crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
>
> (B)  An offense for which the maximum sentence is life imprisonment or death; or
>
> (C)  An offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46 (maritime drug law enforcement).

18 U.S.C. § 3143(a)(2) (citing § 3142(f)(1)(A)-(C)).

Here, the mandatory detention provision will apply should the jury find the defendant guilty of any one of the distribution counts

21

in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(1)(E), and (b)(2) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.  If defendant is convicted, the government will seek defendant's immediate remand.

**V.    CONCLUSION**

The government respectfully requests leave to file such supplemental memoranda as may become necessary during trial.